**In re Lyle Joseph FISCHER, Lillian Ruth Fischer, Debtors.**

**Bankruptcy No. 85–12463.**

United States Bankruptcy Court, D. Kansas.

Jan. 8, 1987.

Tim J. Larson, Talkington, Larson & Chase, Iola, Kan., for debtors.

William S. Woolley, Asst. U.S. Trustee, Wichita, Kan., for U.S. trustee.

Michael G. Christensen, Asst. U.S. Atty., Wichita, Kan., for Farmers Home Admin.

Eric D. Bruce, Bruce & Davis, Wichita, Kan., for Federal Land Bank.

## MEMORANDUM OF DECISION

JOHN K. PEARSON, Bankruptcy Judge.

On November 13, 1986, the debtors in the above captioned Chapter 11 filed a motion to convert their case to Chapter 12. The matter came on for hearing before the Court after the effective date of the new Chapter 12 provision. The parties were directed to submit briefs and the United States Trustee, Farmers Home Administration and the debtors have done so. The United States Trustee objects to conversion of the case as does the Farmers Home Administration. The matter is ready for ruling.

The material facts are not in dispute. The debtors operate a dairy farm and decorating business in the vacinity of Fort Scott, Kansas. The total scheduled debt is $569,558.02. The debtors filed a Chapter 11 petition on December 19, 1985 and a creditors' meeting under § 341 of the Code was held by the United States Trustee on January 31, 1986. The Federal Land Bank was granted relief from the stay to begin its foreclosure proceeding April 3, 1986. On June 18, 1986 the Farmers Home Administration filed a motion for a deadline for the filing of the plan. The Court entered an order setting the deadline as August 25, 1986.

The debtors filed a plan and disclosure statement August 22, 1986. Both the Farmers Home Administration and the Federal Land Bank have lodged objections to the plan and disclosure statement.

On October 9, 1986 the disclosure statement came on for approval. Upon the objections of the creditors, the Court noted several material problems with the disclosure statement and directed the debtors to make another attempt. It now appears that the creditors will not agree to any Chapter 11 plan that the debtors can perform, because of the amount of the debt and differences over the values of the assets.

The debtors now seek to convert to Chapter 12 and allege that they intend to file a plan within thirty (30) days of the entry of an order of conversion. As indicated, the United States Trustee and the Farmers Home Administration oppose the conversion.

## ISSUES BEFORE THE COURT

Does the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 (the "1986 Act") permit conversion of existing cases to Chapter 12 after the effective date?

If conversion is permitted, should conversion be allowed under the facts of this particular case?

## SUMMARY OF RULING

While the Court concludes that in an appropriate case it may order the conversion of a Chapter 11 case, filed prior to November 26, 1986, to Chapter 12, conversion should not be permitted in this case because of the age of the case and the debtors' prior inability to effectuate a plan.

## DISCUSSION

Should the conversion be permitted? The 1986 Act was cobbled together and adopted in some haste as the Ninety-ninth Congress rushed to adjourn. Congress recognized the desperate need to change some of the provisions of the Bankruptcy Code not only to facilitate, but to encourage

bankruptcy as a salvage option for the troubled family farm. To the extent that the Legislature is capable of having an intent, it is eminently clear that the Congress intended to provide farmers with special tools under the Bankruptcy Code to salvage the family farm. The haste with which Congress acted resulted in a number of drafting problems. The Act itself is silent as to the conversion of existing cases. The provision on effective dates, § 302(c)(1),[1] can be read in two ways: that the provisions of Chapter 12 were not to apply to existing cases *before the effective date* or that conversion would not be allowed at all. Both the Farmers Home Administration and the United States Trustee urge the latter position.

The accompanying committee statement states indirectly that conversion should be possible.[2] The debtors suggest that the Bankruptcy Code and transition provisions themselves are ambiguous and that resort to the legislative history, including the committee statement, is essential to determine the legislative intent. The United States Trustee and the Farmers Home Administration perceive no ambiguity and suggest that resort to the legislative history is not permitted.

■■ "In determining legislative intent, the courts are not bound to an examination of the language alone, but may properly look into the causes which impel a statute's adoption." *Maxi Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297 (10th Cir.1986). But where the statute is plain and unambiguous resort to legislative history is inappropriate absent rare and exceptional cir-

cumstances. *Wilson v. Harris Trust & Savings Bank,* 777 F.2d 1246 (7th Cir. 1985). However, an examination of legislative history is permissible to determine whether support exists for alternative meanings. *In re Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.Cal.1986); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 200, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). "Moreover, an extraordinary showing of contrary intentions justifies a limitation on the plain meaning." *In re Tandem,* 61 B.R. at 740 citing as authority *Garcia v. United States* 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984).

■ The Court concludes that conversion in an appropriate case is permitted. The transition provisions of § 302 can be read in at least two ways suggesting an ambiguity. The legislative history is overwhelmingly in favor of conversion of existing cases where appropriate and equitable. Thus the Court concludes that for at least some short period of time after November 26, 1986 the Court may permit the conversion of existing Chapter 11 and 13 cases to Chapter 12. The Court then turns to the factors which should be considered in permitting conversion.

*The Conversion Checklist:*

■ The legislative history baldly states that it is expected that the courts will exercise discretion in each case, allowing conversion only where it is equitable to do so and further suggests that chief among the factors the courts should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

1. Which reads: "The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code *before* the effective date of this Act." (Emphasis added.)

2. The Committee statement is:
   APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES
   It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.
   Chief among the factors the court should consider is whether there is a substantial like-

lihood of successful reorganization under Chapter 12.
   Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

It goes on to state that where a reorganization has been filed and where the parties have substantially relied on "current law", conversion should not be permitted. The Court concludes that the following factors should be among those considered in determining whether conversion of a particular case should be permitted:

1. The debtors' eligibility for relief under Chapter 12;

2. The probability of "success" meaning the likelihood that the debtor will survive as a family farmer and be able to service the debt retained;

3. The length of time that the pending case has been before the court;

4. The amount of activity in the pending case, including motions for relief and deadlines for filing plans, etc.; and

5. Whether existing creditors have elected under § 1111(b) or other provisions of Chapter 11 which do not apply in Chapter 12.

In the instant case it appears that the debtors are eligible. The total listed debt is less than $600,000.00 and no one has suggested that the debtors' gross income from the decorating business exceeds fifty percent of the gross income.

■■ The legislative history suggests that the Court consider the "substantial likelihood of successful reorganization under Chapter 12." Success in a bankruptcy context is generally in the eye of the beholder. What a secured creditor would consider as a successful Chapter 12 is certainly not the same thing that the debtor would consider successful. In this context, a "successful" Chapter 12 plan is one under which the debtor survives as a family farmer and will be able to make all the payments on the retained debt under the plan. *See* § 1225(a)(6). The § 1225(a)(6) feasibility test is considerably less stringent than the comparable feasibility provision in Chapter 11 found in § 1129(a)(10). The Court has been presented with a prospective cash flow analysis which shows that the debtors would have slightly over $32,000.00 net cash flow in 1987 and substantially greater amounts in each succeeding year. There is

provision for only $10,000.00 in family living expense. If the Court were to find that the land in question had a current value of $80,000.00, it would require twenty-five annual payments of approximately $8,800.00, assuming an interest figure of ten percent.[3] The debtors list further approximately $171,000.00 in machinery and equipment. Assuming again a ten percent interest figure and an eight-year payout, on that debt (without deciding that either is appropriate), it would require annual payments of approximately $24,900.00 to retire the debt. Any major variation in those values would, of course, affect the net result, but it appears that the debtors would be in a position to make substantial payments under a plan of reorganization under Chapter 12 even though the trustee would also be entitled to payments.

The legislative history strongly suggests that the Court must consider the length of time that the case has been pending. This case has been before the Court for approximately one year. In that time two creditors, including the Land Bank, have been granted relief from the automatic stay. The Court notes that the debtors originally listed the Federal Land Bank as virtually fully secured with a debt of approximately $288,000.00. It appears from the motion and memorandum in support thereof that the debtors are asserting that the Federal Land Bank has, in the past year, become undersecured to the extent of approximately $200,000.00. The debtors are now taking the position apparently that the land is worth only $80,000.00. That rather startling change in value, while not affecting eligibility for Chapter 12, bears on the conversion considerations. No creditor has sought to make an § 1111(b) election.

Under the circumstances the Court concludes that a case that has been pending over a year and in which one unconfirmable plan has been filed, should not be converted.

## CONCLUSION

Given all of the circumstances surrounding this particular case, the Court, in its

**3.** The Court is merely assuming ten percent and not suggesting that it is appropriate.

discretion, declines to convert the pending case to Chapter 12.[4]

The foregoing constitutes findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) and Fed.R.Bankr.P. 7052. A separate judgment will be entered giving effect to the determinations reached herein.

---

**4.** Both the United States Trustee and the Farmers Home Administration refer to *In re Waetjen,* Case No. 4–86–3335. Slip Op., a Minnesota bankruptcy case, and an opinion filed therein on November 26, 1986. In that case there is a statement to the effect that conversion should not be permitted. It is clear, however, from the context that Judge Kressel's statement is purely dictum and is not a ruling on the issue. That case is not authority for the statements made by both the United States Trustee and the Farmers Home Administration. It is clear from the court's opinion that the issue of convertability was not being addressed, but that the court was merely suggesting some of the underlying authority. In any event, this Court is not bound by Judge Kressel's decision and certainly is not persuaded by it.