**In re Lorraine JOHNSON–ALLEN, Debtor.**

**Lorraine JOHNSON–ALLEN, Plaintiff,**

**v.**

**CROWN LEASING CORPORATION, Defendant.**

**Bankruptcy No. 86–01239K.**
**Adv. No. 86–0328K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 8, 1987.

See also, Bkrtcy., 67 B.R. 968.

Gary Klein, Philadelphia, Pa., for plaintiff/debtor.

Craig R. Tractenberg, Arthur L. Pressman, Philadelphia, Pa., for defendant.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presently before the Court in the instant adversarial case are three (3) Motions, the most prominent of which is the Defend-

ant's Motion requesting this Court to disqualify ourselves from hearing this matter because of our involvement, prior to taking the bench, in litigation against another party similar to that instituted by the Plaintiff-Debtor against the Defendant here. The Defendant makes its motion for recusal based upon 28 U.S.C. § 144 and 28 U.S.C. § 455(a), (b)(1) and (2). Because we find the affidavit submitted by the Defendant in support of this motion to be legally insufficient, and because, even assuming the truth of the allegations, we do not believe that a reasonable person, knowing all of the relevant facts, would conclude that this Court harbors a personal bias or prejudice with respect to the case *sub judice*, this Motion will be denied. We shall also deny the Defendant's Motion to Dismiss this matter as moot, resolve the Plaintiff's outstanding Motion to compel certain discovery, and schedule proceedings in this matter to further its ultimate disposition in an accompanying Order.

The Debtor filed the instant bankruptcy case on March 14, 1986. On April 17, 1986, she filed the instant adversarial proceeding against CROWN LEASING CORPORATION, the Defendant herein. The Debtor's original case and hence all of its accompanying adversarial proceedings were assigned at random by the Clerk's Office to the Honorable William A. King, Jr., one of the two (2) bankruptcy judges then sitting in Philadelphia. The undersigned was appointed to succeed Judge King on August 27, 1986, and from that date forward assumed all cases formerly assigned to Judge King, including the instant matter.

On May 21, 1986, the Defendant filed a Motion to dismiss this matter as moot, apparently because the Defendant had relinquished its claims against the Debtor, and it contended that, as a result, the Debtor had no right to proceed against the Defendant. Meanwhile, on May 19, 1986, the Debtor embarked upon discovery from the Defendant. Contending that the initial responses tendered were inadequate, the Debtor filed a Motion to compel discovery on September 25, 1986. Both this Motion, and the Defendant's Motion to Dismiss, which had been heard by Judge Goldhaber on June 17, 1986, but which was continued pending completion of discovery, were listed before the undersigned on October 8, 1986.

On the morning of October 8, 1986, the Defendant filed the aforementioned Motion to disqualify the undersigned. The Court briefly heard argument on that date and then, on October 9, 1986, issued an Order requesting the Defendant and the Debtor to submit Briefs on the issues of the Motion to Dismiss, the Motion to Compel Discovery, and the Motion to Disqualify on November 19, 1986, and December 3, 1986, respectively, and to argue same on December 10, 1986. On December 10, 1986, Counsel presented argument to the Court. The issue of recusal was taken under advisement and an Order dated December 15, 1986, directed that Supplemental Briefs relating to the discovery Motion be submitted by December 22, 1986.

The crux of the Defendant's Motion is that the undersigned has evidenced a personal bias or prejudice, not against the Defendant herein, but against an alleged class consisting of members of the " 'rent-to-own' industry," of which the Defendant claims to be a member. The asserted bias consists of statements attributed to the undersigned while a practicing attorney in pleadings and legal memoranda filed in litigation, on a radio talk show, and as reported in a newspaper article, concerning this same litigation. The Defendant sets out the grounds for the request for recusal in its Motion and included the required certification of counsel that the accompanying affidavit in support of the Motion was made in good faith. However, the crucial document, the affidavit, submitted by one Dean Aye, states in its entirety as follows:

1. I am employed by Crown Leasing Corporation, and authorized to take this affidavit on its behalf.

2. Craig R. Tractenberg, one of the attorneys for Crown Leasing Corporation, has reviewed with me the within

Motion to Disqualify the Honorable David A. Scholl.

3. This affidavit by reference incorporates the entire contents of said Motion.

4. I am advised by Mr. Tractenberg, and therefore believe and aver, that the acts cited in said Motion evidence Judge Scholl's personal bias or prejudice against Crown Leasing Corporation, a member of a class consisting of members of the "rent-to-own" industry.

Also attached to the Motion are copies of the Complaint and a Brief filed by the undersigned in *Chandler, et al v. Riverview Leasing, Inc.*, No. 1984–CE–2736 (North.Co.Pa.C.P.).

Attached to the Defendant's Brief, which was filed pursuant to the Briefing Order of this Court, were typed excerpts from a radio talk show on which the undersigned and an attorney representing Riverview Leasing, Inc. appeared on September 23, 1985, and a newspaper article from the (Harrisburg, Pa.) Patriot of May 23, 1986, in which the undersigned is quoted as saying that he hoped that a Harrisburg attorney would represent persons from that area in a suit against Riverview Leasing, Inc.

At the hearing on December 10, 1986, the Defendant offered no testimony but moved into evidence, without objection by the Plaintiff's Counsel, one ninety-minute cassette tape which was represented to be a recording of the entire radio show from which the typed excerpts were taken.

The statutory bases for the Defendant's motion are 28 U.S.C. § 144 and 28 U.S.C. §§ 455(a), (b)(1) and (b)(2), which state in pertinent part as follows:

§ 144. Bias or prejudice of judge

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

§ 455. Disqualification of justice, judge or magistrate

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

...

We shall first address the Motion in relation to the standards under 28 U.S.C. § 144. The Third Circuit has spoken quite clearly in interpreting this section: "The mere filing of an affidavit under this section does not automatically disqualify a judge. *Behr v. Mine Safety Appliances Co.*, 233 F.2d 371 (3d Cir.), *cert. denied*, 352 U.S. 942 [77 S.Ct. 264, 1 L.Ed.2d 237] ... (1956). Disqualification results only from the filing of a timely and sufficient affidavit." *United States v. Townsend*, 478 F.2d 1072, 1073 (3d Cir.1973).

Although we find it a somewhat troubling that the Defendant waited until the day of the hearing to file its motion, we do find the affidavit to be timely filed because the Motion was filed before, albeit

very shortly before, any considerations of the merits by the undersigned. We would only be inclined to dismiss such a motion as untimely if it were made on the basis of facts known to the moving party and not raised until *after* the Court had begun to consider the merits of a case.

We must now turn to the sufficiency of the affidavit. In judging the sufficiency of this affidavit, while we may not pass on the truth of the facts alleged, we must determine whether the facts alleged "establish fair support for the charge of bias." *Smith v. Danyo,* 585 F.2d 83, 87 (3d Cir. 1978) (*quoting Beyer v. United States,* 255 U.S. 22, 33–34, 36, 41 S.Ct. 230, 233, 234, 65 L.Ed. 481 (1921)). The Third Circuit has articulated the standards for such an affidavit as follows:

> In an affidavit of bias, the affiant has the burden of making a three-fold showing:
>
> 1. The facts must be material and stated with particularity;
> 2. The facts must be such that, if true, they would convince a reasonable man that a bias exists.
> 3. The facts must show the bias is personal, as opposed to judicial in nature.

*United States v. Thompson,* 483 F.2d 527, 528 (3d Cir.1973).

*See also, e.g., Parrish v. Board of Comm'rs of Alabama State Bar,* 524 F.2d 98, 100 (5th Cir.1975) (en banc); *Simmons v. United States,* 89 F.2d 591, 592–93 (10th Cir.1937); and *Shank v. American Motors Corp.,* 575 F.Supp. 125, 129 (E.D.Pa.1983).

██ Without addressing the truth or falsity of the allegations contained in the Defendant's affidavit, we hold that the affidavit is insufficient for the following reasons. First of all, the affiant's knowledge is not first-hand or personal, as is required by the very nature of an affidavit. As structured by the affidavit, Mr. Aye, the affiant, is only averring to what he has been advised by one of the Defendant's attorneys, Craig R. Tractenberg, Esquire. The sole source of the affiant's knowledge are statements, not of record, made to him by Mr. Tractenberg. We do not know the nature of the statements made by Mr. Tractenberg to the affiant upon which he relies in making the affidavit. We certainly have no knowledge or information as to the source of Mr. Tractenberg's knowledge except for the sources attached to the Motion and Brief which were identified earlier and which we shall discuss *infra.*

Secondly, while stating that he is employed by and authorized to make the affidavit on behalf of the Defendant, the affidavit does not disclose his position with the Defendant. We hold that this also causes the affidavit to be legally insufficient. Insofar as § 144 directs that a party file the requisite affidavit, it is obviously significant to determine the capacity, position, and importance of the person filing the affidavit on behalf of the Defendant. The affidavit before us gives the Court no clue as to whether he is a high level management employee, a low level clerical employee, or someone in between who is employed by and authorized to file the affidavit for the Defendant.

Thirdly, we must look at the source of the statements which purports to reflect bias or prejudice. Most of the statements referenced in the Defendant's Motion are taken directly from legal pleadings filed by the undersigned while still a practicing attorney and merely reflect a legal point of view. We hold that such statements, made as an advocate, are not sufficient to establish support for a charge of bias. *See Smith v. Danyo, supra.* In any event, it is now established that "prior knowledge about legal issues is not a ground for recusal of a judge." *Cipollone v. Liggett Group, Inc.,* 802 F.2d 658, 659 (3d Cir. 1986). Furthermore, we hold that such statements would not convince a reasonable person, knowing all the circumstances, *e.g.,* that such statements were made *by* an advocate *in* litigation, that bias exists. Moreover, considering that the exclusive source of the information was Mr. Tractenberg, the alleged factual basis is clearly not material, as is required by the first prong of the aforementioned test. Thus, the Defendant's affidavit is legally insufficient and fails to satisfy the first and second

prongs of the three-prong test set forth in *United States v. Thompson, supra,* at 528.

However, the Defendant also asserts that the undersigned made statements exhibiting bias or prejudice which were not made in legal documents but which were made during the pendency of litigation in which the undersigned was counsel of record. The statements complained of came from a newspaper article and from a radio talk show. We must consider whether these kinds of statements "establish fair support for the charge of bias." We hold that statements made in the course of litigation, not involving the same parties but concerning the same legal issues, to the news media or in public, do not establish fair support for the charge of bias. No less of an authority than Chief Justice Rehnquist has spoken authoritatively on the subject of disqualification of a judge because of positions expressed by a judge in public prior to taking the bench. *See Laird v. Tatum,* 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). Prior to taking the bench, Chief Justice Rehnquist had testified as an expert witness before a Senate subcommittee in support of governmental use of electronic surveillance, and prepared a memorandum of law in support of the position of the United States Department of Justice on this matter in 1971. Within the next year, a case challenging the very use of the surveillance equipment which Chief Justice Rehnquist had supported came before the Court. In declining to disqualify himself from hearing the case, in view of an historical analysis of the responses by past members of the Court to such questions, the Chief Justice states as follows:

My impression is that none of the former Justices of this Court since 1911 have followed a practice of disqualifying

themselves in cases involving points of law with respect to which they had expressed an opinion or formulated policy prior to ascending to the bench. 409 U.S. at 831, 93 S.Ct. at 11.

*Accord: Smith v. Danyo, supra,* 585 F.2d at 87 ("there is a world of difference between a charge of bias against a party as a member of a class and a bias in favor of a particular legal principle.").

While accepting its contents as true for the purposes of this analysis, the newspaper report that the undersigned exhorted all rental customers of Rent America to "get a lawyer in Harrisburg and sue the pants off [Rent America]," obviously and specifically refers to a specific company, which is not the Defendant herein, and is insufficient to establish fair support for the charge of bias or prejudice. Furthermore, we hold that this statement would not convince a reasonable person, knowing all the circumstances under which the statement was made, *e.g.,* statements made by an advocate concerning another party defendant, that bias towards the particular Defendant here exists.

We have carefully reviewed the typed excerpts of the radio show which were attached to the Defendant's Brief and we have listened to the tape[1] which we accepted into evidence. We find that the statements made therein would not convince a reasonable person, knowing all the circumstances, that bias towards the Defendant herein exists.

◼ Finally, the affidavit is legally insufficient in that it identifies the target of the asserted bias as "the 'rent-to-own' industry," which is not an easily definable or recognizable entity. Many businesses lease a wide variety of consumer goods in

---

1. We note that the typed exerpts do not accurately reflect that which occurs on the cassette tape, *e.g.,* on page three, a statement, which sanctions the use of a gun in defense of one's home to thwart a repossessing creditor, is incorrectly attributed to the undersigned; on page nine (9), side two (2) of the tape is inaccurately noted as an end when further discussion can be heard on the tape; and on pages nine (9) through twelve (12), a transcription occurs which is noted as side three (3) of a tape, but only sides one (1) and two (2) of one cassette were moved into evidence and had been represented as a transcription of the radio show in its entirety by counsel for the Defendant. We find these discrepancies disturbing because Counsel certified, at argument, that the cassette constituted the complete record of the talk show rather than a partial or edited version.

various contractual configurations. It is therefore unclear as to which businesses the Defendant contends that the Court's bias extends. The contentions of the Defendant clearly do not involve any claims that the Court had ever litigated any matter against, or had any personal knowledge pertinent to, the Defendant itself. Rather, the claim arises from a contention that the Court has a bias against the " 'rent-to-own' industry," reflected by his acting as counsel in litigation against Riverview Leasing, Inc., and another company in Allentown, Pennsylvania, E–Z TV & Appliance Rental, Inc., which are also claimed to be members of this industry.

Significantly, 28 U.S.C. § 144 requires, *inter alia*, that the affiant assert the existence of "a *personal* bias or prejudice either against him [the party] or in favor of any adverse party" (emphasis added) in order to obtain the assignment of a case to another judge. The Defendant makes no such assertion but identifies itself as a member of a class. The frailty of the Defendant's argument becomes apparent when one transposes the logic to other situations, *e.g.*, is recusal required where, prior to becoming a judge, the practicing attorney has brought suit against a landlord based upon the kind of lease utilized, and, while on the bench, is now called upon to pass upon the substantially same form lease with respect to a different landlord? We believe the answer to be in the negative, even though various groups of entities, such as landlords and the Defendant herein, may be able to artfully define themselves within a particular class for the purpose of claiming bias where such a claim does not lie against a particular party.

Section 144 "has been strictly construed, so as to safeguard the judiciary from frivolous attacks upon its dignity." *Simonson v. General Motors Corp.*, 425 F.Supp. 574, 578 (E.D.Pa.1976) (citations omitted). Hence, for the reasons set forth above, we find the Defendant's affidavit to be legally insufficient.

■ We now turn to an analysis of 28 U.S.C. § 455(a) and (b)(1) as a basis under which the undersigned should consider our possible disqualification. The applicable standard is an objective one, and thus a judge should disqualify himself only if there is a reasonable factual basis for doubting his impartiality. *In re M. Ibrahim Khan, P.S.C.*, 751 F.2d 162, 164 (6th Cir.1984). In this district, this standard has been set forth as what the reasonable person would think about the judge's impartiality, knowing all the relevant facts. *United States v. Nacrelli*, 543 F.Supp. 798, 801 (E.D.Pa.1982) (Motion for disqualification denied). We are not persuaded that a reasonable person, knowing all the relevant facts, would reasonably doubt the impartiality of the undersigned.

To reiterate some of the relevant facts discussed *supra:* (1) most of the statements which are referred to in the Motion and affidavit are taken directly from legal documents filed in another case, involving different plaintiffs and defendants, by the undersigned as an advocate; (2) the other statements referred to were made to the media or publicly in connection with that case; and (3) the statements express a legal opinion.

We also observe that the bias requiring recusal must be "personal," as opposed to generalized. Both 28 U.S.C. § 144 and 28 U.S.C. § 455, which must be construed *in pari materia*, specifically relate to *personal* bias. *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir.1983). *See also, e.g., Eisler v. United States*, 170 F.2d 273, 278 (D.C.Cir.1948), *appeal dismissed*, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (1949); and *Price v. Johnston*, 125 F.2d 806, 811 (9th Cir.1942). Although the term "personal" does not appear in 28 U.S.C. § 455(a), it does appear in 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1), and we believe that, construing these sections in *pari materia*, this term must be read into 455(a) as well.

Much closer pre-bench contact of judges with the actual litigants, their counsel, and issues which have come before them on the bench have been rejected as bases for recusal in other cases. *See United States v. Hollister*, 746 F.2d 420, 425–26 (8th Cir. 1984) (counsel for prosecution had been law

clerk for judge three (3) months before involvement in case); *Barry v. United States*, 528 F.2d 1094, 1097–1100 (7th Cir. 1976) (judge who heard defendants' criminal case had been United States Attorney and had appeared before grand jury encouraging indictment of defendants five (5) months before judicial appointment); *Simmons, supra*, 89 F.2d at 592 (judge had represented party who was a good friend of litigant and an important witness in a case a short time before taking judicial oath); and *Black v. American Mutual Ins. Co.*, 503 F.Supp. 172 (E.D.Ky.1980) (judge had represented three (3) or four (4) parties in different but similar products liability cases against the same party defendant as in the case before him). *Cf. Cipollone v. Liggett Group, Inc., supra* (judge had represented a different party in similar litigation fifteen (15) years before hearing case).

We find the facts of these cases, in all of which the courts held that recusal was inappropriate, much closer to those of the instant case than the facts of those cases cited by the Defendant where the courts have held that recusal was proper. For example, the Defendant cites to *Mims v. Shapp*, 541 F.2d 415 (3d Cir.1976), in which the appellate court had before it an instance where the trial court, in a prisoners' rights case, had made statements commending the defendant warden and stating, if he could have, the trial judge would have executed several of the plaintiffs. In light of this, the Third Circuit found that recusal was appropriate. In *Rapp v. VanDusen*, 350 F.2d 806 (3d Cir.1965), also cited by the Defendant, the Court of Appeals held that it was improper for a judge to continue to sit to hear a case where he had hired defense counsel as his own counsel on a writ of prohibition brought against him by the opposing parties. In *Townsend* and *Thompson*, the Court of Appeals held that a judge who had indicated that he would sentence all selective service violators to thirty (30) months in prison as a means of pressuring conscientious objectors into submission should have disqualified himself from hearing selective service violation cases.

■ For the reasons expressed earlier, 28 U.S.C. § 455(b)(1) is not applicable and does not provide a basis for recusal of the undersigned since it specifically addresses "personal bias or prejudice concerning a party." The Defendant does not assert the existence of such a bias against the Defendant herein. However, this section also requires disqualification when the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." The bare conclusory assertion by the Defendant that the undersigned has such knowledge, "whether, as a matter of fact, option prices to purchase goods subject to Debtor's rental contracts, exceed 'nominal consideration,'" does not require that we refrain from addressing the truth of such an assertion because this section requires us to make an independent determination regarding disqualification. Obviously if we had any such knowledge, we would be required to disqualify ourself. However, we have absolutely no personal knowledge of any disputed evidentiary facts concerning this proceeding.

■ We turn now to the Defendant's contention that since the undersigned was previously in the practice of law with the Debtor's Counsel, and since the Debtor's Counsel assumed the representation of the Plaintiffs in the *Chandler* matter, that 28 U.S.C. § 455(b)(2) requires our disqualification. However, this section has no applicability to the case *sub judice* for several reasons. First, the undersigned was last associated with the Debtor's Counsel six and one half (6½) years ago. Secondly, it was another attorney in another office of the Debtor's Counsel who became co-counsel for the Plaintiffs in *Chandler*, and then only after the undersigned ceased participation therein. Thirdly, the *Chandler* matter is not the case *sub judice*. Hence, we find disqualification to be inappropriate on the basis of 28 U.S.C. § 455(b)(2).

Viewing this motion from a philosophical vantage point, we note that the men and women who serve as United States Bankruptcy Judges all take the bench with certain experiences which we hope will serve

as guidance to us. Some matters, due to our pre-judicial experience, are more familiar to us than others, and, in such matters, we feel of most service in effecting dispute-resolutions. We thus find it somewhat ironic that the Defendant seeks to have us recuse ourselves because we allegedly have had too much exposure with the issues involved in this case. The fact that judges should not disqualify themselves because of having too much knowledge of the issues before them is well-spoken to by the Court of Appeals in *Cipollone,* in the following passage at 802 F.2d 659–60:

> Cipollone does not assert that Judge Hunter has knowledge of evidentiary facts. If Judges could be disqualified because their background in the practice of law gave them knowledge of the legal issues which might be presented in cases coming before them, then only the least informed and worst-prepared lawyers could be appointed to the bench.

Every judge approaches every case with *some* level of knowledge and some legal predispositions or opinions, and this is necessary unless machines are to be used in the judicial process in place of human judges. Some of those experiences are pertinent to our making a more enlightened decision than we might otherwise render.

The foregoing is not to state that we *have* any predisposition in this case because, as we advised Counsel, we do not. It is important for all litigants to understand that, in taking the oath of office, all judges have sworn to disregard their previous allegiances as attorneys. Thus, the role of a judge is dramatically different from that of an advocate and a person sitting as a judge may issue utterances quite inconsistent with those which he or she expressed earlier as an attorney. It would discredit the significance of the oath of office of both attorney and judge to suggest that one cannot perform the one role first and later the other. In fact, it is almost universally true that performance of the role of attorney precedes performance of the role of judge. This consideration of the differences in these roles tempers and balances the very human predispositions which a judge brings into the decisionmaking process from his experiences as a lawyer.

A final observation is that recusal cannot be lightly granted, for its exercise permits the litigant seeking it to engage in at least some measure of judge-shopping. *See, e.g., United States v. Dalfonso,* 707 F.2d 757, 760–61 (3d Cir.1983); and *Simonson v. General Motors Corp., supra,* at 578. The selection of judges who hear cases in our court is at random, and this case came to be assigned to the undersigned solely by the normal assignment process of the case to Judge King and our appointment to succeed Judge King. This process of random selection should not be lightly altered in any case, particularly where such a generalized and impersonal bias as that alleged against the undersigned here is in issue. Significant practical problems arise whenever recusal occurs and hence we must recuse ourselves only when required by the pertinent statutes.

For all of the foregoing reasons, the Defendant's Motion that we disqualify ourselves will be denied in the attached Order. As indicated above, we shall also dispose of the outstanding Motion to Dismiss this matter as moot, which we find has no merit; the Debtor's Motion to Compel Discovery, which we grant in part; and establish a schedule for ultimate disposition of this matter.