**CROWN LEASING CORPORATION, Petitioner,**

v.

**Lorraine JOHNSON–ALLEN, et al., Respondents.**

**Civ. A. No. 87–367.**

United States District Court, E.D. Pennsylvania.

Feb. 11, 1987.

Arthur Pressman, Philadelphia, Pa., for petitioner.

Gary L. Klein, Philadelphia, Pa., for respondents.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

The petitioner, Crown Leasing Corporation, seeks a writ of mandamus or a writ of prohibition to require a bankruptcy judge to recuse in an adversary proceeding, and to reassign the case to another judge.

The factual background may be briefly summarized: Lorraine Johnson-Allen is the debtor in a Chapter 13 proceeding originally pending before the Honorable William A. King, Bankruptcy Judge, now pending before his successor, the Honorable David Scholl, Bankruptcy Judge. She entered into a series of transactions for the lease-purchase of certain household appliances from the petitioner, Crown Leasing Corporation. Petitioner is listed as a creditor, and has filed claims, in the bankruptcy proceeding. Contending that all of the lease-purchase transactions were illegal in various respects, the debtor filed an adversary complaint against petitioner, seeking damages and other relief. Petitioner seeks to disqualify Judge Scholl from presiding over this adversary proceeding. In a carefully considered Opinion, 68 B.R. 812 (Bkrtcy.E.D.Pa.1987), Judge Scholl has determined that the affidavit in support of

the motion for disqualification is insufficient under 28 U.S.C. § 144, and that, viewed objectively, the facts do not establish bias or the appearance of bias under 28 U.S.C. § 455.

Before ascending to the bench of the Bankruptcy Court, Judge Scholl was employed by the Lehigh Valley branch of Community Legal Services. In that position, he was a zealous advocate on behalf of consumers generally, and economically deprived consumers in particular. He was extensively involved in litigation against firms prominent in the "rent-to-own" industry. In 1984, on behalf of a class of consumer-plaintiffs, he filed suit against a class of "rent-to-own" defendants, seeking injunctive and declaratory relief to the effect that their practices and contracts violated various state and federal statutes, and should be enjoined. The lease-purchase agreements involved in that litigation were substantially identical to the lease-purchase agreements at issue in the pending adversary proceeding against the petitioner.

Quoting extensively from briefs submitted by Judge Scholl in the state litigation, petitioner argues that Judge Scholl has exhibited a bias against the entire industry, and cannot be expected to decide fairly the factual and legal issues involved in petitioner's case. If that were the only issue, I would readily agree with Judge Scholl: the fact that a judge advanced certain legal arguments in the course of representing clients before becoming a judge does not reflect bias, or cast doubt upon his/her impartiality, nor does it present the appearance of impropriety.

There are, however, two additional factors in the present situation which complicate matters. In the course of the state litigation, Judge Scholl was a panelist on a radio talk-show, on a Harrisburg radio station, devoted principally to the alleged misdeeds of firms in the "rent-to-own" industry. In the course of the program, he made numerous statements which could reasonably be interpreted as expressing strong personal views on the subject at hand, rather than mere advocacy on behalf of his clients. And, after his selection as bankruptcy judge but before his term commenced, he was interviewed by a local newspaper concerning the state litigation—which the trial court had just decided in favor of his clients—and again expressed his strong, and arguably personal, views on the subject. Among other things, he expressed the strong hope that consumers would now see their way clear to bring numerous suits for damages against at least one "rent-to-own" firm.

The state court litigation is apparently still pending—at least, it was still pending on appeal when the present petition was filed—and plaintiffs in that action continue to be represented by Community Legal Services, albeit by an attorney from the Philadelphia branch of that organization. Judge Scholl had had no connection or association with either the Philadelphia branch of Community Legal Services or the successor lawyer for at least six or seven years. Unfortunately, however, the class allegations in the state court action are sufficiently broad to include the petitioner as a member of the defendant class; and the prayer for relief in that action is sufficiently sweeping to warrant the conclusion that, although petitioner was not a named defendant in that action, as a practical matter the suit instituted by Attorney Scholl on behalf of his clients was a suit against the petitioner in this proceeding now pending before Judge Scholl.

These additional circumstances, in combination, present at least a serious question as to the existence of an appearance of impropriety. I am not prepared to hold that Judge Scholl was obliged to recuse. I have no doubt of his actual impartiality; and it is obvious that he has carefully considered, and struggled with, the recusal question. It is a fair inference from his written Opinion in the matter, as well as from the transcript of the hearing, that Judge Scholl was reluctant to impose additional burdens upon his colleagues by recusing. Thus, from the perspective of the bankruptcy judge, the choice was clear: he

would not disrupt normal administration or impose additional burdens upon his colleagues merely to avoid a controversial and unpleasant situation.

Fortunately, this court has available additional choices which were not available to the bankruptcy judge. While the petition for mandamus/prohibition presents interesting and unusual issues under the judicial disqualification statutes and the Code of Judicial Conduct, I deem it unnecessary to decide them. The very presence of non-frivolous questions on that score suggests, in my view, that the interests of efficient judicial administration would best be served by treating the pending petition for mandamus/prohibition as equivalent to a petition to withdraw the reference, insofar as the adversary proceeding between the debtor and the petitioner is concerned. As a matter within this court's discretion—and, most emphatically, without expressing any view as to the correctness of the bankruptcy judge's recusal decision—that application will be granted, and the reference withdrawn.

An appropriate Order follows.