In re Randy J. **REPPERT** and Sharon A. Reppert, Debtors.

Bankruptcy No. 82–01460 T.

United States Bankruptcy Court, E.D. Pennsylvania.

March 23, 1988.

---

David C. Schattenstein, Perkin, Rapoport & Schattenstein, Allentown, Pa., for debtor.

Edward S.G. Dennis, Jr., U.S. Atty., Virginia Powel, Asst. U.S. Atty., E.D. Pa., Philadelphia, Pa., for U.S.

## MEMORANDUM AND OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Nearly five years after filing their chapter 11 petition, Randy J. Reppert and Sharon A. Reppert ("debtors") filed a motion to convert the case to chapter 12 pursuant to the Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986, P.L. 99–554 ("Act"), the relevant provisions of which are now codified at 11 U.S.C. § 1201 *et seq.* The Farmer's Home Administration ("FHA") objected on the basis that this case was pending in chapter 11 on the date on which the Act took effect and that the Act precludes conversion of such cases. We will deny debtors' motion to convert.

We are confronted with a question of statutory interpretation. The Code provision governing conversion of chapter 11 cases has been amended by the Act and now allows conversion from chapter 11 to chapter 12 only if the debtor requests the conversion, the debtor has not been discharged under 11 U.S.C. § 1141(d) and such conversion would be equitable. 11 U.S.C. § 1112(d). Section 302(c)(1) of the Act states that these provisions covering conversion to chapter 12 "... shall not apply with respect to cases commenced under Title 11 of the United States Code before the effective date of the Act." The plain language of this statute clearly suggests that the instant case is not a candidate for conversion because it was pending in chapter 11 without a confirmed plan on November 26, 1986, the effective date of the Act.

As every decision on the subject has now noted, the Conference Report accompanying the Act contains curious language suggesting that Congress envisioned that chapter 11 cases pending on the effective date could be converted to chapter 12 under appropriate circumstances.[1] This conflicting language and the paucity of guiding appellate decisions on the subject [2] have resulted in nearly three dozen reported opinions, some allowing, and some prohibiting, such conversions.

The minority position is expressed by the courts which allow the conversions. These courts analyze the Conference Report and the statutory provisions *jointly* and conclude that the statutory language is susceptible of more than one interpretation. *See e.g., In re Fischer,* 72 B.R. 634, 636, Bankr.L.Dec. para 71,786 (Bankr.E.D.Kan. 1987); *In re Mason,* 70 B.R. 753, 755, 15 B.C.D. 534, 16 C.B.C.2d 332, Bankr.L.Dec. para. 71,630 (Bankr.W.D.N.Y.1987). As a result, they analyze the objectives of the statute and its policy underpinnings. *See e.g., In re Big Dry Angus Ranch, Inc.,* 69 B.R. 695, 699 (Bankr.D.Mont.1987). These courts find it "inconceivable" that "... Congress intended to discriminate against farmers who were forced into bankruptcy prior to the effective date of Pub.L. 99–554." *In re Henderson,* 69 B.R. 982, 987, 16 C.B.C.2d 440 (Bankr.N.D.Ala.1987).

The majority view prohibits such conversions, relying on three maxims of statutory

---

**1.** The Conference Report reads in relevant part:
APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES
It is not intended that there be routine conversion of chapter 11 and 13 cases, pending at the time of enactment, to chapter 12. instead, it is expected that courts will exercise their sound discretion in each case in allowing conversions only where it is equitable to do so. Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under chapter 12. Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, ability to convert to the new chapter should be limited.

**2.** Our review has uncovered only a few such opinions. *See Clarke v. Valley National Bank of Arizona (In re Clarke),* 78 B.R. 1008 (9th Cir.B. A.P.1987) (refusing to allow conversion); *Bough v. United States,* 81 B.R. 539 (W.D.Mo.1987) (refusing to allow conversion); *Farmers Home Adm. v. Erickson Partnership (In re Erickson Partnership),* 68 B.R. 819, 15 B.C.D. 614, 16 C.B.C.2d 164 (Bankr.D.S.D.1987), *aff'd* 74 B.R. 670, Bankr.L.Dec. para. 71,904 (D.S.D.1987) (allowing conversion).

interpretations: (1) the plain meaning rule, *see e.g., In re Clarke,* 78 B.R. 1008, 1010; *In re Tomlin Farms, Inc.,* 68 B.R. 41, 42, 15 B.C.D. 296, 16 B.C.D.2d 35 (Bankr.D.N. D.1986); *In re Solomon,* 72 B.R. 506, 507 (Bankr.E.D.Ark.1987); *In re Council,* 70 B.R. 20, 22 (Bankr.W.D.Tenn.1987); (2) the rule that a later section of a statute controls over an earlier section, and (3) the rule that a specific action of Congress (the provisions of Section 302(c)(1)) controls over a general action (the provisions of 11 U.S.C. § 1112(d) discussing conversions). *See e.g., In re Evans,* 72 B.R. 21, 24, Bankr.L.Dec. para. 71,774 (Bankr.D.Or. 1987); *In re Barclay,* 69 B.R. 552, 554 (Bankr.C.D.Ill.1987) (both cases interpreting these last two statutory maxims). These courts acknowledge that we may look beyond the plain words of a statute when the wording is ambiguous but caution that the ambiguity must be apparent from the statutory language itself. Thus, they do not read the Committee Report[3] *with* Section 302(c) in order to decide whether the language of the statute is ambiguous. *See e.g., In re Tomlin Farms,* 68 B.R. 41, 43; *In re Council,* 70 B.R. 20, 22.

The cumulative effect of the issuance over a short period of time of so many opinions on the same question presents us with an avalanche of conflicting precedent. The arguments raised in the early cases have been repeated and embellished in later cases which, in turn, offer more quotes and authority, which in turn, are quoted and cited anew. We have reviewed the statutes and relevant reported opinions and have no earthshaking insights to add. In light of this, we simply applaud the wording of, and concur with the holding of, our colleague from the Northern District of Indiana, who explained that "(t)here are an abundance of Supreme Court pronouncements which can be cited for any theory of statutory construction," and who felt that another lengthy opinion would be merely a "... considerable waste of judicial time and effort." *In re Carnahan,* 77 B.R. 207, 209–10 (Bankr.N.D.Ind.1987). Refusing to stray from the plain meaning of the statute, the court prohibited conversion. Similarly, we hold that the plain meaning rule is appropriately applied in this case[4] and allows us only one conclusion: conversion of this case is not permissible.

Although the parties have not argued the applicability of 11 U.S.C. §§ 1112(d) and (f) to the facts of this case, we think that both bear close scrutiny. The initial petition was filed on April 2, 1982. It took debtors over four years to propose a plan and disclosure statement, to which a creditor objected. During this time, debtors have participated in at least two Department of Agriculture programs, including the 1986 dairy termination program under which they will receive $75,007.42 for their herd of cattle. The money is conditioned on the debtors' controlling the farm for a period of five (5) years to insure that no dairying

---

**3.** For a fascinating discussion suggesting that legislative reports may not evince the true intention of Congress, *see In re Rossman,* 70 B.R. 985, 995 & n. 8, *citing Hirschey v. F.E.R.C.,* 777 F.2d 1, 7–8 & n. 1 (D.C.Cir.1985) (transcript of discourse between Senators Dole and Armstrong discussing the origin of a particular committee report).

**4.** Under certain circumstances, involving the interpretation of other, less than clear legislative pronouncements, it may be appropriate to deviate from the plain meaning rule. *See e.g., In re Daily Corp.,* 72 B.R. 489, 15 B.C.D. 1024, 16 C.B.C.2d 659 (Bankr.E.D.Pa.1987). In *Daily,* Judge Fox resorted to an analysis of 11 U.S.C. § 1112(b) and the legislative history of the Code to determine whether bankruptcy judges have the power to dismiss chapter 11 cases sua sponte (the new 1986 amendment to 11 U.S.C. § 105(a) allowing such dismissals had not yet taken effect). Judge Fox suggested that the plain meaning approach is inappropriate when contrary to reason, legislative purpose, or legislative history, or when it would lead to an absurd result. *Id.* at 493. To determine whether the statutory language was ambiguous, he considered both the legislative history and the Code language. *Id.* at 490. This is the same analytical approach utilized by the courts following the minority position on the chapter 12 conversion issue. Our decision to adopt the majority approach in the instant case does not conflict with *Daily* because there is a critical distinction between the type of statutory language being analyzed in the two cases. In *Daily,* Judge Fox was required to interpret the relatively ambiguous "party in interest" language of former § 1112(b). In contrast, section 302(c)(1) clearly states that conversion of the instant case is prohibited.

occurs. The Plan states that it will be funded through payments from this dairy termination program and from the sale of seven (7) lots for residential building. Even if we had held that conversion to chapter 12 is permissible, we would still be bound by the language of 11 U.S.C. § 1112(f), which states that a case may not be converted to another chapter unless the debtor is eligible to be a debtor under that chapter. Debtor is receiving income for not engaging in the traditional duties of a dairy farmer, and we suspect that debtor is not a "family farmer." 11 U.S.C. § 109(f). Additionally, § 1112(d) allows conversion only when such conversion is equitable. The Conference Report[5] would suggest that the age of this case, the existence of a plan and disclosure statement, and the substantial activity in this case militate against allowing conversion.

We note that we agree with the spirit (but not the holdings) of the cases following the minority position. No one can deny that the Act was designed to ameliorate swiftly some of the problems faced by the family farmer. Since we assume that Congress did not intend to create this interpretational problem, we must also assume that some error, omission or oversight caused the present dilemma. Congress has moved to rectify the problem through the introduction, in both Houses, of bills designed to allow these conversions.[6] In the interim, aggrieved debtors are not necessarily without recourse. Under 11 U.S.C. § 1112(b), a party in interest can request dismissal of the case. The debtor may, subject to certain limitations,[7] refile in chapter 12.

An order denying debtors' motion is attached.

**5.** *See* discussion, *supra* at n. 1.

**6.** House Bill 1152, "The Family Farmer Equity Act," is in the House Judicial Committee on Monopolies and Commercial Law. No hearings have been held yet. On July 24, 1987, the Senate passed S. 548, "The Retiree Benefits Security Act of 1987," which contains a provision changing the language of the Code to allow such conversions.

**7.** *See* 11 U.S.C. § 109(g).