**Janet SMITH and David Smith,
Appellants,**

v.

**J. Joseph DANYO, M.D.**

No. 78–1192.

United States Court of Appeals,
Third Circuit.

Argued Sept. 5, 1978.
Decided Oct. 17, 1978.

Harris T. Bock, Alan Schwartz, Mendel, Schwartz & Bock, Ltd., Philadelphia, Pa., for appellants.

James K. Thomas, Joseph P. Hafer, Thomas & Thomas, Harrisburg, Pa., for appellee.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION

GIBBONS, Circuit Judge:

Janet and David Smith appeal from an adverse judgment in their diversity medical malpractice action against Dr. J. Joseph Danyo. They contend that the trial court erred in denying their motion, pursuant to 28 U.S.C. § 144, that he disqualify himself from sitting in the case for reasons of personal bias or prejudice. They also urge that the court committed error in failing to make available to counsel certain special interrogatories in advance of their being submitted to the jury, that the jury's answers to those interrogatories are inconsistent, and that the court unduly restricted counsel's argument to the jury by prohibiting his use of a chart. We hold that the court properly denied the § 144 disqualification motion, that there is no inconsistency in the jury's answers, that prohibiting reference to the chart in argument to the jury was a permissible discretionary ruling, and that no prejudice has been shown in the matter of the special interrogatories. Therefore we affirm.

## I. THE § 144 MOTION

When the Smiths' case was first called for trial on July 11, 1977, the trial court granted a mistrial because of a reference to plaintiffs' lack of health insurance made by their attorney in his opening statement to the jury. Thereafter, on October 19, 1977, the Smiths filed affidavits, pursuant to 28 U.S.C. § 144, setting forth the reasons for their belief that the trial judge was biased or prejudiced against them. Accompanying those affidavits was a certificate of counsel stating that the Smiths' affidavits were made in good faith. The trial court denied the § 144 motion on three grounds, each of which we will consider separately.

First, the court ruled that because the Smiths had failed to proceed by a formal motion for recusal, and because they did not submit a brief within fifteen days after such motion was to have been filed, their request for recusal would be denied. For the proposition that a formal motion is required under § 144, the court cited F.R. Civ.P. 7(b); for the briefing requirement, he cited a provision in a twenty-three page pre-trial order, entered as a matter of routine at the outset of this and every other civil case before him. These reasons for denying the request for disqualification are legally insufficient. The requirements of § 144 are explicit: an affidavit by a party and a certificate by counsel stating that it is filed in good faith. There is no reason which occurs to us for engrafting upon that

statute additional procedural requirements, either from the Federal Rules of Civil Procedure or of a trial court's own devising. The matter of recusal is entirely collateral to the progress of the lawsuit. It is a special proceeding for which the Congress has designated a specific procedure. Moreover, even if the requirement of Rule 7(b), that all applications to a court for an order be by motion, were to be read into § 144, the affidavit and certificate serve all the purposes of that rule. A motion is an application to a court in order to obtain some ruling or order. Rule 7(b) requires no more than that such a motion "state with particularity the grounds" upon which it is based. Plainly, an affidavit which is filed to obtain an order disqualifying a judge satisfies the requirements of Rule 7(b), requirements intended simply "to give a simple and elastic procedure without too much emphasis on form." *Raughley v. Pennsylvania Railroad Co.,* 230 F.2d 387, 391 (3d Cir. 1956). The Smiths' failure to type in the word "motion" above the word "affidavit" in no way detracts from the notice which the affidavit gave of the nature of the application. Taking a common law pleader's approach to applications filed pursuant to § 144 tends to undermine an important purpose of that statute—to protect the court as an institution from the erosion of its authority flowing from even the appearance of impropriety.

 The trial court next ruled that the three-month delay which occurred between the events giving rise to the charge of bias and the October 21, 1977 filing of the affidavit was a ground for refusing to recuse. Yet, the timeliness of a § 144 motion turns not solely on the actual time elapsed, but on other factors as well. For example, courts will often consider whether the affiant has participated in substantial pre-trial motions between the time he first learned of the asserted bias and the time he filed the § 144 request. *See, e. g., Andrews, Mosburg, Davis, Elam, Legg & Bixler, Inc. v. General Insurance Company of America,* 418 F.Supp. 304, 307 (W.D.Okl.1976); *United States v. Civella,* 416 F.Supp. 676, 680 (W.D. Mo.1975). *See also* Note, *Disqualification*

*of Judges for Bias in the Federal Courts,* 79 Harv.L.Rev. 1435, 1444 (1966). In the instant case, no significant steps were taken by either party affirmatively to invoke the participation of the court between the events in July which the affidavit of prejudice recounts and the October filing of the request. In addition, courts are particularly reluctant to entertain § 144 motions shortly before the trial is to begin. *Compare Eisler v. United States,* 83 U.S.App. D.C. 315, 170 F.2d 273, 277 (1948) (6 days), *cert. dismissed,* 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (1949); *Lipscomb v. United States,* 33 F.2d 33, 34 (8th Cir. 1929) (5 days). The Smiths' case, however, was not listed for trial until December, by which time the court had had ample time to consider, and had ruled upon, the request for recusal. To be sure, timeliness is a significant factor in a § 144 proceeding. The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming. Neither can it tolerate the practice of waiting until the eve of trial and then resorting to a § 144 affidavit in order to obtain an adjournment. But especially when the circumstances giving rise to the charge of bias occur or are discovered after the case has commenced, timeliness should be measured not in some absolute and arbitrary manner from the date of discovery, but with respect to the future stages of the case. Such an approach is an appropriate accommodation between the competing institutional interests in avoiding the appearance of impropriety on the one hand and avoiding abuse of the § 144 procedure on the other. By that measure, the October filing of the affidavit, well before the December trial date, and before the Smiths had called upon the trial court for any new rulings, was timely.

 Finally, the trial court considered the sufficiency of the affidavits and found them wanting. We do also. The Smiths' contention was that during the course of

the case leading to the first mistrial, the court had by its actions demonstrated a bias against a class of which they were members —specifically, diversity personal injury plaintiffs. In judging the sufficiency of § 144 affidavits, while a court may not pass on the truth of the facts alleged, it must determine that the facts establish "fair support" for the charge of bias. *Berger v. United States,* 255 U.S. 22, 33–34, 36, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Moreover, the alleged bias must be rooted in extrajudicial sources, rather than in judicial actions which can be corrected on appeal. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Examining the affidavits in detail, it is apparent that for the most part the Smiths object to remarks made during rulings. These remarks, if they were made, may have been intemperate, objectionable, or otherwise inappropriate, but they do not provide grounds for recusal under § 144. *See, e. g., United States v. Crovedi,* 467 F.2d 1032, 1039–40 (7th Cir. 1972), *cert. denied,* 410 U.S. 982, 93 S.Ct. 1510, 36 L.Ed.2d 178 (1973); *Senchal v. Carroll,* 394 F.2d 797, 799 (10th Cir.), *cert. denied,* 393 U.S. 979, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968). The Smiths also object that some rulings were wrong. Such errors, even compounded, do not satisfy the requirements of § 144. *See, e. g., United States v. Amick,* 439 F.2d 351, 369 (7th Cir.), *cert. denied,* 404 U.S. 823, 92 S.Ct. 47, 30 L.Ed.2d 51 (1971); *United States v. Anderson,* 433 F.2d 856, 860 (8th Cir. 1970). Finally, there is the charge that the trial court was prejudiced against the Smiths in that it believes that diversity personal injury litigation does not belong in federal court. Many thoughtful federal judges share that belief. Such a view, however, constitutes not evidence of judges' bias against personal injury plaintiffs, but only of their interest in what they believe to be law reform. As we pointed out in *United States v. Thompson,* 483 F.2d 527, 529 (3d Cir. 1973), there is a world of difference between a charge of bias against a party as a member of a class and a bias in favor of a particular legal principle. In short, we agree with the trial court that the affidavits, taken at face value, are insufficient to establish disqualifying bias or prejudice.

## II. THE SPECIAL INTERROGATORIES

■ The trial court bifurcated the issues of liability and damages. At the end of the liability case, after counsel had submitted requests to charge and completed their closing arguments, the court submitted to the jury forty-nine special interrogatories which it had prepared, but which counsel had never seen. After the charge to the jury, counsel for all parties objected to the use of these interrogatories. The court's explanation for not affording counsel an opportunity to comment upon them before their use is set forth in the margin.[1] From the explanation, it appears that the trial court considered that it had no obligation to permit counsel an opportunity to see the special verdict interrogatories prior to their use. We disagree. Special verdicts are

---

1. As to the point that you didn't get these questions before the end of the charge, I had good reason for putting in the record that we had spent over 26 man hours on these questions. The clerk simply—secretary; I call her the clerk, but she is the Deputy Clerk, who comes down here from Williamsport and who was a competent legal secretary with the firm with which I was associated 20 years ago—spent all day yesterday making the revisions which were necessary because of the changes in the position of counsel. And if you will notice, she didn't get these questions to me, and we had no chance, really, to go over them until about 10 minutes before the charge was finished.

That is one of the reasons why you didn't have these—I told you it didn't appear to me likely that you were going to get these questions because we simply couldn't do it—as a matter of fact, the Senior Law Clerk and I worked Sunday night from 8:30 to 11:30 to make sure the instructions were right. The questions had already been formulated. We didn't have any problem with that; but because of the changes, we were so desperately concerned that there be no error in the instructions that it took us all that time. Then yesterday morning, during closings, we each checked the instructions as they were typed. We each found two errors. So we sent it back to the drawing board. So that's why you didn't have them earlier.

governed by F.R.Civ.P. 49(a). That rule provides in part:

> The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.

The court must *instruct* the jury, in other words, and in so doing must focus upon the content of the special interrogatories. Instructions, in turn, are governed by F.R. Civ.P. 51. That rule permits counsel to submit requests *for* jury instruction, and provides:

> The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury . . . .

The obvious purpose of the mandatory requirement that the court rule on requests to charge prior to counsel's closing argument is to permit counsel to structure its argument so as to anticipate the trial court's charge. Rule 49(a) is equally explicit: the court *shall* give instructions respecting special interrogatories. While Rule 49(a) is silent as to whether a court must show special verdict. interrogatories to counsel prior to their use, it must be read together with Rule 51. Otherwise counsel will have been deprived of the opportunity to request instructions on what may be very significant issues in the jury's deliberation. Moreover, even aside from Rule 51, giving counsel an opportunity to comment upon the proposed interrogatories is an obvious safeguard against inadvertent confusion or error in their preparation.

The appellee, pointing to *Cramer v. Hoffman*, 390 F.2d 19 (2d Cir. 1968), argues that while it may be a desirable practice to supply proposed special verdict interrogatories to counsel prior to their closing argument, the decision whether or not to do so nevertheless rests within the discretion of the trial court. With deference to the Second Circuit, we are unpersuaded that any of the usual reasons for recognizing discretion in the trial court support such recognition in this instance. Federal judges presiding at jury trials are far more than mere referees. But trial counsel are important players, and the object of the game is the jury's verdict. The form which that verdict is to take is highly significant, and counsel should know it before they have their last opportunity to address the jury. Requiring the court to afford that opportunity imposes no significant burden upon its management of the case. Moreover, in this case the importance of the interrogatories to counsel is evidenced by the court's own statement that their production required 26 man hours. In view of the significance of the interrogatories, it is even harder to justify—in the context of a ten-day trial—the court's unwillingness to afford counsel the additional hour or so which might have been consumed in examination of and comment upon the interrogatories. Indeed, the time so spent might often improve the interrogatories and thus result in a more orderly, and shorter, jury deliberation. Accordingly, we think the practice of depriving counsel of the opportunity to see and comment upon special verdict interrogatories prior to their closing argument is error.

■ On the record before us, however, the error was harmless since it resulted in no actual prejudice to the Smiths. Appellants suggest prejudice in three respects. First, they contend that the forty-nine questions were confusing and inconsistent. By a stipulation in this court, however, that contention was withdrawn. Next, they contend that the interrogatories produced inconsistent, and irreconcilable answers. To be sure, there are some answers which indicate a finding of negligence. But other answers indicate a finding that such negligence as occurred was not the proximate cause of Mrs. Smith's injuries. Finally, the Smiths' main argument is that their attorney was deprived of the opportunity to argue intelligently to the jury. But they do not tell us what he said in argument which he would not have said, or what he omitted which he would have included. Indeed, the insubstantiality of the claim of prejudice in making a closing argument is established for purposes of this appeal by the fact that counsel did not ask that the closing argument be transcribed by the court reporter.

We are left entirely in the dark as to what was argued, except to the extent that we can surmise it from the colloquy between court and counsel after the charge. The objection to the interrogatories made at that time is quite unspecific. We must assume, therefore, that the court's set of interrogatories produced no real surprise. *See Clegg v. Hardware Mutual Casualty Co.,* 264 F.2d 152 (5th Cir. 1959).

### III. USE OF THE CHART

■ The Smiths challenge the trial court's ruling that their counsel could not, in his closing argument to the jury, make reference to an elaborate chart, listing Mrs. Smith's symptoms in chronological order. The chart was not in evidence. Its use was objected to on the ground that it was a compilation of facts that are favorable to the plaintiff and would therefore tend to overemphasize those facts in the eyes of the jury. The trial court sustained this objection, but informed counsel that he could argue all the factual contentions listed on the chart. The ruling respecting the use of visual aids not in evidence is a matter within the discretion of the trial court. *E. g., United States v. Ellenbogen,* 365 F.2d 982, 988 (2d Cir. 1966), *cert. denied,* 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967). No abuse of discretion occurred here, and no real prejudice can be demonstrated from the ruling.

### IV. CONCLUSION

The judgment appealed from will be affirmed.