**PLANNED PARENTHOOD OF SOUTH-EASTERN PENNSYLVANIA, Repro-ductive Health and Counseling Center, Women's Health Services, Inc., Women's Suburban Clinic, Allentown Women's Center, and Thomas Allen, M.D., Plaintiffs,**

v.

**Robert P. CASEY, N. Mark Richards, Ernest D. Preate, and Michael D. Marino, Defendants.**

**Civ. A. No. 88–3228.**

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1993.

Kathryn Kolbert, The Center for Reproductive Law & Policy, New York City, Sharon J. Phillips, Pepper, Hamilton & Scheetz, Susan Cary Nicholas, Women's Law Project, Philadelphia, PA, for plaintiffs.

Kate L. Mershimer, Deputy Atty. Gen., Harrisburg, PA, for defendants.

## MEMORANDUM & ORDER

HUYETT, District Judge.

This case, which involves a constitutional challenge to numerous provisions of the 1988 and 1989 amendments to the Pennsylvania Abortion Control Act ("the amended Act"), 18 Pa.Cons.Stat. §§ 3201–3220, is back before this Court on remand from the Supreme Court of the United States and the Court of Appeals for the Third Circuit. Defendants contend that this Court has compromised the appearance of its impartiality by virtue of certain language contained in the opinion issued on August 24, 1990. They have accordingly moved that I disqualify myself from further proceedings pursuant to 28 U.S.C. § 455(a). For the reasons stated below, defendants' motion shall be denied.

## I. INTRODUCTION

In *Planned Parenthood v. Casey*, 744 F.Supp. 1323 (E.D.Pa.1990), I held many provisions of the amended Act unconstitutional and I permanently enjoined enforcement of those provisions. The Court of Appeals for the Third Circuit reversed in part and affirmed in part the judgment of this Court, holding all of the challenged provisions constitutional with the exception of the spousal notification provision. *Planned Parenthood v. Casey*, 947 F.2d 682 (3d Cir.1991). The Supreme Court in turn affirmed in part and reversed in part the judgment of the court of appeals, holding the challenged provisions constitutional with the exception of the spousal notification requirement and its related reporting requirements. *Planned Parenthood v. Casey*, — U.S. —, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

The case is now before this Court on remand for "such further proceedings as may be appropriate." *Planned Parenthood v. Casey*, 978 F.2d 74, 78 (3d Cir. 1992). "Such further proceedings" presently include consideration of plaintiffs' motion to reopen the record and defendants' motion to enforce the court of appeals' mandate and to partially dissolve the August 24, 1990 permanent injunction. Further, the court of appeals has appointed this Court as Special Master to review plaintiffs' petition for attorneys' fees.

Defendants contend that certain language contained in this Court's opinion in *Planned Parenthood v. Casey*, 744 F.Supp. 1323 (E.D.Pa.1990), has "created the impression that [my] heart is with the plaintiffs." Defendants' Brief in Support of Their Motion for Disqualification ("Defendants' Brief") at 10. According to defendants, I must disqualify myself and withdraw from further proceedings pursuant to 28 U.S.C. § 455(a), for if I remain on the case, "the outcome of this massive, important, and widely followed case would be shrouded with suspicion." Defendants' Brief at 11, *citing Pfizer Inc. v. Kelly*, 977 F.2d 764, 785 (3d Cir.1992). Plaintiffs oppose defendants' motion on two principal

grounds. First, plaintiffs contend that there is no reasonable appearance of partiality in this case, and second, plaintiffs argue that defendants' motion is inexcusably untimely.

## II. DISCUSSION

### A. *The Standard for Disqualification Under 28 U.S.C. § 455(a)*

Section 455(a) of Title 28 of the United States Code provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). On two recent occasions, the Third Circuit has addressed the issue of disqualification and clarified the legal standard governing withdrawal. In *Haines v. Liggett Group, Inc.,* 975 F.2d 81 (3d Cir.1992), the court emphasized that "the polestar" governing disqualification is "[i]mpartiality and the *appearance of impartiality.*" *Id.* at 98 (emphasis in original), *quoting Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). In *Pfizer Inc. v. Kelly,* 977 F.2d 764 (3d Cir.1992), the court explained further that Congress enacted section 455(a) to ensure that the public's perception of the judiciary remained positive by avoiding the harm to public confidence that would result from the appearance of bias, especially in high profile cases. *Id.* at 782.

■ Defendants rely principally on the two cases cited above in support of their motion for disqualification. They urge that the strong language in my opinion has created an appearance of partiality, and that my withdrawal is therefore required pursuant to *Haines* and *Pfizer.* However, defendants omit an important factor in their discussion of the legal standard for disqualification as interpreted by the court of appeals. Although it is true that even the *appearance* of bias necessitates recusal, the Court "must determine whether a *reasonable* person, knowing all the acknowledged circumstances, might question the district judge's continued impartiality." *Pfizer,* 977 F.2d at 781 (emphasis added). In other words, the question of whether an appearance of bias exists centers on reasonableness, and "a judge must consider whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality." *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1356 (3d Cir.1990).

In light of this standard, I shall address defendants' motion by answering the following inquiry: Does the language in *Planned Parenthood v. Casey,* 744 F.Supp. 1323 (E.D.Pa.1990), create an appearance of bias to a reasonable person knowing all the circumstances?

### B. *Whether a Reasonable Appearance of Impartiality Exists*

#### i. The Background of this Litigation

A reasonable person knowing all of the acknowledged circumstances in this action would be aware of this Court's lengthy treatment of the legislation at issue. Most importantly, that person would be aware of my ruling in *American College of Obstetricians & Gynecologists v. Thornburgh,* 552 F.Supp. 791 (E.D.Pa.1982), in which I permitted nearly every challenged provision of the Pennsylvania Abortion Control Act of 1982, 18 Pa.Cons.Stat.Ann. §§ 3203–20 (1982), to take effect, with the exception of the 24–hour waiting period provision.

The 1982 Act contained provisions nearly identical to those at issue in this case, yet under then-existing precedent, I found them constitutional. On appeal of that decision, and pursuant to the intervening decisions of the United States Supreme Court in *City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) and *Planned Parenthood Ass'n v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), the Court of Appeals for the Third Circuit largely reversed this Court. *American College of Obstetricians & Gynecologists v. Thornburgh,* 737 F.2d 283 (3d Cir. 1984). The Supreme Court subsequently affirmed the court of appeals. *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986).

In the present litigation, plaintiffs challenged the 1988 and 1989 amendments to the Act, which essentially reenacted the provisions that were struck down by the Supreme Court in *Thornburgh*. Relying on Supreme Court precedent as it had developed since the last time the Act was before me, this time I held most of the provisions unconstitutional and enjoined their enforcement. *Planned Parenthood v. Casey*, 744 F.Supp. 1323 (E.D.Pa.1990).

A reasonable person with knowledge of the procedural history of this litigation would hardly be left with the impression that I harbored a philosophical bias on this issue, or that my "heart is with the plaintiffs" as defendants assert. Instead, a fair scrutiny of my decisions throughout the history of this litigation confirms that I have merely attempted to follow the developing Supreme Court precedent on this issue, even at the cost of reversing my prior holdings.

### ii. The Propriety of the Allegedly Objectionable Language

Defendants object to the language in the following "epilogue" of my opinion as particularly offensive and as endorsing the "pro-choice" political causes:

> For now, at least, the law of abortion remains undisturbed, because only the United States Supreme Court has the power to change it. But those individuals who have felt secure over the past seventeen years with the fundamental right, and the protections which flow therefrom, guaranteed by *Roe v. Wade* would be wise to heed Justice Blackmun's admonition—"the signs are evident and very ominous, and a chill wind blows."
>
> What the future holds is not certain. But one thing must be evident. Individuals can no longer feel as secure with the protections provided by the judiciary in this area. Instead, a woman's privacy rights and individual autonomy may soon be subjected to the vicissitudes of the legislative process. Therefore, the protection afforded will depend on the ballot box, and the nature of the protection, if any, could vary from term-to-term depending on the composition of the legislature. If unprotected by their vote and the votes of other pro-choice advocates, many women will be forced to seek abortion services elsewhere. For those that can afford it, this may only mean traveling to another jurisdiction. For those that cannot, the result may well be disastrous and tragic. But for now, at least, the law of abortion remains undisturbed.

744 F.Supp. at 1396–97 (footnotes omitted). In addition, defendants object to my description of "[t]he hostility of Pennsylvania's legislature to the protection of a woman's right of privacy to choose abortion." *Id.* at 1372.

As so eloquently stated by Judge Higginbotham in a similar case in which defendants moved for recusal based on bias:

> [d]efendants cannot seriously contend that it is improper to quote with approval the dissenting opinions of Supreme Court Justices. Time and time again, in rejecting legal conclusions that appeared obvious to a majority of their contemporaries on the Court, dissenting Justices have shown themselves to be true prophets, predicting with uncanny accuracy the course the law would eventually take.

*Pennsylvania v. Local 542, Int'l Union of Operating Engineers*, 388 F.Supp. 155, 175 (E.D.Pa.1974).[1]

The language to which defendants object in this case is nothing more than this Court's adoption of certain Supreme Court Justices' opinions, some from the majority, some from the dissents. For instance, whereas I noted the legislature's "hostility" toward a woman's right to privacy, the Supreme Court in *Thornburgh* described recent state legislation as "seemingly designed to prevent a woman … from exercising her freedom of choice," and further, Justice Blackmun wrote, "[t]he States are

---

**1.** Although the analysis in *Operating Engineers* was based on § 455 before its amendment to include the appearance of bias standard, the defendants asserted both bias and "apparent" bias, and the opinion addressed whether Judge Higginbotham's remarks created the *appearance* of impartiality. *See Operating Engineers,* 388 F.Supp. at 158, 162.

not free, under the guise of protecting maternal health or potential life, to *intimidate* women into continuing pregnancies." *Thornburgh,* 476 U.S. at 759, 106 S.Ct. at 2178 (emphasis added).

Similarly, my opinion reflects that a woman's privacy rights may soon be determined by the legislative process. This reflection echoes the dissent in *Webster v. Reproductive Health Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (Blackmun, J. concurring in part and dissenting in part), in which Justice Blackmun wrote "this Court implicitly invites every state legislature to enact more and more restrictive abortion regulations...." *Id.* at 538, 109 S.Ct. at 3067.

■ To the extent that my adoption of Justice Blackmun's view of the law can be read as an expression of disagreement with the current direction of abortion law, no reasonable basis for disqualification arises under 28 U.S.C. § 455(a). Recusal is not required simply because a judge holds and has expressed specific views on a legal subject. *See, e.g., Blasband v. Rales,* 979 F.2d 324 (3d Cir.1992) (district court's expression of disagreement with court of appeals' holding not a basis for disqualification); *Southern Pacific Communications Co. v. A.T. & T.,* 740 F.2d 980, 990 (D.C.Cir. 1984) ("the mere fact that a judge holds views on law or policy relevant to the decision of a case does not disqualify him from hearing the case"), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

■ A judge must be free to express his or her opinion on important questions of law without facing the risk of disqualification. To hold otherwise would intolerably handicap the judiciary and result in a muzzled federal bench making decisions that are "less rational and responsive to difficulties." *Dronenburg v. Zech,* 746 F.2d 1579, 1583 (D.C.Cir.1984) (Bork, J., concurring in the denial of rehearing *en banc* ). Further, the impartiality of a judge should not be questioned simply because he or she employs strong language in expressing that opinion, especially if such language is used in closing for emphasis. As succinctly stated by the First Circuit, "[i]f a concluding

paragraph using colorful language to drive home a point proves an entire opinion biased, then few, if any judicial opinions pass muster under § 455(a)." *Blizard v. Frenchette,* 601 F.2d 1217, 1221 (1st Cir.1979).

### iii. The Influence of Media Reports

In support of their contention that a reasonable appearance of bias has resulted from the language of my opinion, defendants point to various statements of the press that allegedly suggest bias. Apparently, defendants equate the media with "a reasonable person knowing all the circumstances." However, as previously stated, the correct standard in a determination of apparent bias is the perception of the reasonable person knowing all the circumstances, not the opinion of specific members of the press. To the extent that the tone of the media coverage, or defendants' impression of that tone, diverges from an objective view of a reasonable person aware of the surrounding circumstances, the reasonable person's view governs.

Defendants offer various articles which simply report my opinion, often verbatim. Obviously, these articles do not create grounds for disqualification if the language of the opinion itself does not. Other cited articles comment on the Court's "criticism" of the Pennsylvania legislature, some specifically mentioning the language that described the legislature as hostile to a woman's right of privacy to choose an abortion. *See,* Don DeBenedictis, *Two Abortion Laws Struck Down,* A.B.A.J., Nov. 1990, at 20; David Treadwell, *Pennsylvania Abortion Law's Key Parts Voided,* Los Angeles Times, Aug. 25, 1990, at A2; *Federal Court Strikes Down 1988 and 1989 Pennsylvania Abortion Control Acts,* PR Newswire, Aug. 24, 1990; *Ruling Striking Pa. Abortion Law To Be Appealed,* United Press Int'l, Aug. 24, 1990. While my observation of "hostility" in the legislature may or may not be criticism, such an observation should not leave the impression of bias to the reasonable observer, especially in light of Justice Blackmun's characterization of state legislatures as trying to "intimidate" women in *Thornburgh.*

More troublesome are the remarks of two commentators who describe my opinion as "a virtual plea to voters" and a "warning" to abortion rights advocates. Don DeBenedictis, *Two Abortion Laws Struck Down*, A.B.A.J., Nov. 1990, at 20; Neil Lewis, *Pennsylvania's Abortion Restrictions Are Struck Down by a Federal Judge*, N.Y. Times, Aug. 25, 1990, § 1, at 8. First, a fair reading of the opinion simply would not leave a reasonable person with knowledge of all the circumstances with the impression that I was personally encouraging voter activity of any kind. To the extent that these particular journalists described my opinion as taking such a stance, they mischaracterize and exaggerate the plain language therein. In any case, inflammatory language from the media is no measure of the reasonable person's impression. Simply put, the value of publicized statements like those cited above concerning an issue which defendants themselves describe as "among the most controversial and divisive issues in our national life today" lends little helpful guidance to the more important inquiry of whether the reasonable person with knowledge of all the circumstances would perceive bias.[2]

### C. *Timeliness of Defendants' Motion*

Plaintiffs strenuously argue that defendants' motion for disqualification should be denied because it is untimely. Plaintiffs point out that the language that forms the basis of defendants' motion was written nearly two and one half years ago. Further, plaintiffs charge, defendants did not raise the issue in post-trial proceedings before this Court or upon notice that this Court would serve as Special Master to review plaintiffs' petition for attorneys' fees.

Once a party seeking recusal knows of the facts on which recusal is based, he must make a timely motion to disqualify, or lose his right to do so. *Schwartz v. University of Pennsylvania Hospital*, No. 88–4865, 1992 WL 102864, at * 2, 1992 U.S.Dist. LEXIS 7381, at *4 (E.D.Pa. May 4, 1992), *citing Delesdernier v. Porterie*, 666 F.2d 116, 121–23 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982). The Third Circuit, however, views the timeliness issue in this context as a good faith requirement. *Smith v. Danyo*, 585 F.2d 83, 85 (3d Cir.1978).

The record in this action reflects that defendants' motion for disqualification is indeed belated. However, an earlier motion may have been premature and inappropriate, as it was not clearly foreseeable that this Court would be further involved in this case until after the remand from the Third Circuit. A finding that defendant's motion is untimely would require a careful and lengthy inquiry into the circumstances surrounding the post-trial proceedings of this case. *Id.* at 86. I find it unnecessary to conduct such an inquiry or to address the technical issue of the timeliness of defendants' motion at all, for as the above discussion reflects, the motion is deficient on the merits.

### III. CONCLUSION

After careful consideration of the arguments of counsel and the facts and circumstances surrounding my opinion of August 24, 1990, I shall deny defendants motion for disqualification. A reasonable person with knowledge of all the circumstances would not be left with an impression of bias after reading that opinion. I acknowledge and share the grave concerns surrounding any appearance of bias in a case of such notoriety and importance, but the

**2.** Moreover, even if the media's impressions were valid measures of the reasonable person's perception of bias in this matter, the fact that certain commentators perceived the opinion as biased holds little weight. A cursory review of the extraordinary press coverage reveals that for every commentator suspecting bias, one can be found remarking on impartiality. *See, e.g.,* Tom Troy, *Ruling Striking Pa. Abortion Law To Be*
*Appealed,* United Press International, Aug. 24, 1990 ("Huyett's ruling stuck doggedly to the precepts of Roe vs. Wade...."); Shannon Duffy, *3rd Circuit Clears Way for Abortion Act But More Hearings May Be Held,* The Legal Intelligencer, Nov. 2, 1992, at 32 (spokesperson for Attorney General Preate noting that Judge Huyett is "well regarded for his respect of the law.")

facts supporting defendants' motion simply fail to trigger those concerns.