**[J-19-2017][M.O. – Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | | |
|---|---|---|
| ROY H. LOMAS, SR., D/B/A ROY LOMAS CARPET CONRACTOR, | : | No. 87 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellee | : | Court dated 12/21/15 at No. 2391 EDA |
| | : | 2011 affirming the judgment of the |
| v. | : | Court of Common Pleas of Montgomery |
| | : | County, Civil Division, entered on |
| | : | 8/16/11 at No. 2000-05929 |
| JAMES B. KRAVITZ, CHERRYDALE | : | |
| CONSTRUCTION CO., ANDORRA | : | |
| SPRINGS DEVELOPMENT, INC., AND | : | |
| KRAVMAR, INC. F/K/A EASTERN | : | |
| DEVELOPMENT ENTERPRISES INC., | : | |
| | : | |
| Appellants | : | ARGUED:  March 8, 2017 |


**DISSENTING OPINION**


**CHIEF JUSTICE SAYLOR**                              **DECIDED:  September 28, 2017**

Although I agree with the majority that a motion for recusal must be promptly filed, my view diverges from the majority's application of the "earliest possible moment" standard and its conclusion that Appellants' filing was untimely.  Majority Opinion, *slip op.* at 15.  I believe that, in the circumstances presented, Appellants' submission was not late, and further, they demonstrated an appearance of impropriety, warranting the recusal of the full Montgomery County bench.

Beginning with the "earliest possible moment" precept, the language of this standard, if taken literally, suggests that an immediate response is required, akin to an evidentiary objection, which I believe is problematic in the recusal context.  For example, the Superior Court's Opinion in Support of Affirmance ("OISA") in this matter

indicated that Appellants were required to halt the proceedings and file a recusal motion immediately following Judge Branca's testimony that revealed his financial interest, rather than proceed with the other witnesses who were present and prepared to testify that day. *See Lomas v. Kravitz*, 130 A.3d 107, 120 (Pa. Super. 2015) (*en banc*) (OISA).[1] In this respect, the majority's reasoning does not elaborate what considerations or circumstances generally inform the timeliness analysis. Instead, it merely recites the number of elapsed days and observes that the parties' evidentiary presentations had concluded.

As the United States Supreme Court has cautioned, a request for recusal "should not be made lightly." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 826-27, 106 S. Ct. 1580, 1588 (1986) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923) (explaining that recusal motions should be filed with "care and good faith")); *In re Crawford's Estate*, 307 Pa. 102, 109, 160 A. 585, 587 (1931) ("The charge of disqualification is serious, and should not be made lightly or frivolously."). "[A] request for the disqualification of a trial judge is a most serious undertaking which should not be pursued absent thorough factual investigation and legal research." *Johnson v. Dist. Court In & For Jefferson Cty.*, 674 P.2d 952, 957 (Colo. 1984).

Even though judges are presumed to be impartial arbiters and conscientious of potential biases and appearances of such, some practitioners express reservations that seeking recusal will be taken personally by the judge to the detriment of the client and counsel. *See* Debra Lyn Bassetta, Rex R. Perschbacher, *The Elusive Goal of*

---

[1] The Superior Court OISA also indicated that Appellants had an opportunity to seek recusal when they were informed of Judge Branca's prior representation. *See Lomas*, 130 A.3d at 120 (OISA). I agree with the majority, however, that Appellants were not aware of all the facts relevant to their recusal motion until Judge Branca testified on September 6, 2007. *See* Majority Opinion, *slip op.* at 18.

*Impartiality*, 97 Iowa L. Rev. 181, 204 (2011) (acknowledging attorneys' concerns that the suggestion of disqualification "has the potential to antagonize the challenged judge, either consciously or subconsciously, with the result that the moving litigants and their counsel may suffer" (quoting Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges §1.7, at 18 (2d ed. 2007))). Thus, the perceived potential for retribution may cause counsel to be reluctant to file a motion in the first instance. *See* Jeffrey Cole, *Jilting the Judge: How To Make and Survive a Motion To Disqualify*, 34 Litigation, no. 2, Winter 2008, at 48 ("Lawyers are as quick to see bias as they are reluctant to file disqualification motions."). Additional reluctance may stem from a lack of substantial information supporting the request, apart from speculation and hearsay. *See* Amanda Frost, *Keeping Up Appearances: A Process-oriented Approach to Judicial Recusal*, 53 U. Kan. L. Rev. 531, 568-69 (2005) (observing that, in many instances, a party will only possess uncorroborated information and noting that there are rarely procedures for investigating speculation or gossip, thus resulting in a reluctance to advance a disqualification claim).

Further, there is arguably some procedural ambiguity in Pennsylvania's recusal jurisprudence that may result in requests not being sought with absolute immediacy. Relative to initiating a recusal request, the case law has variously referred to an "application by petition" or the filing of a "motion," *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 220, 489 A.2d 1291, 1299 (1985), as well as the lodging of an "objection," *Goodheart v. Casey*, 523 Pa. 188, 199, 565 A.2d 757, 763 (1989); *see also Reilly*, 507 Pa. at 222, 489 A.2d at 1300 ("In order to preserve an issue for appeal, [the party has]

to make a timely, specific objection at trial *and* raise the issue on post-trial motions." (emphasis in original)).[2]

Although this historical lack of consistency may be attributable to deviations in nomenclature, it is notable that there are no statutory or rules-based procedures for recusal in Pennsylvania, as there are in other jurisdictions.[3] *See, e.g.*, 28 U.S.C. §144 ("Bias or prejudice of judge"), §455 ("Disqualification of justice, judge, or magistrate judge"); ALASKA STAT. §22.20.022 ("Peremptory disqualification of judge"); Alaska R.Crim.P. 25 ("Judge—Disqualification or Disability"); Colo.R.C.P. 97 ("Change of Judge"); Fla.R.Jud.Admin. 2.330 ("Disqualification of Trial Judges"); Ind. R. Trial P. 76 ("Change of venue"). The only written directive that arises in the recusal context comes by way of reference to Rule 2.11 of the Code of Judicial Conduct, which has been employed to inform the recusal standard. *See Goodheart*, 523 Pa. at 200, 565 A.2d at 763 (suggesting that a judge's self-evaluation of impartiality is guided by the factors provided in the Code of Judicial Conduct); Kenneth S. Kilimnik, *Recusal Standards for Judges in Pennsylvania: Cause for Concern*, 36 VILL. L. REV. 713, 726 (1991) ("Since

---

[2] Tangentially, there is some criticism of the *Reilly* Court's recusal analysis (which later cases frequently referenced) insofar as it relied on *In re Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931). Specifically, *Reilly* adopted the recusal procedures from *Crawford's Estate* without acknowledging that the *Crawford's Estate* Court's explication pertained to the then-existing recusal statutes, which had been repealed prior to the *Reilly* decision. *See* Kenneth S. Kilimnik, *Recusal Standards for Judges in Pennsylvania: Cause for Concern*, 36 VILL. L. REV. 713, 725-27 (1991).

[3] Although not applicable in civil matters, such as the present case, the Rules of Criminal Procedure require that requests for disqualification be included in an omnibus pretrial motion for relief. *See* Pa.R.Crim.P. 578, *Comment* (7). The Comment further advises that this rule is "not intended to limit other types of motions, oral or written, made pretrial or during trial," but it encourages the "earliest feasible submission" of such matters. *Id.*; *see also* Pa.R.J.C.P. 346, *Comment* (same).

1974, the Code of Judicial Conduct had provided the sole non-case derived principles in Pennsylvania governing judicial recusal . . ..").  The lack of codified procedural direction has been cited as an impediment to requesting recusals.  *See* Frost, *Keeping Up Appearances: A Process-oriented Approach to Judicial Recusal*, 53 U. KAN. L. REV. at 567 ("The very absence of statutorily prescribed procedures discourages lawyers from moving for disqualification and makes recusal motions all the more ad hoc and exceptional.").

In all, the above concerns reflect significant uncertainties on the part of practitioners that may reasonably delay the submission of recusal motions. Accordingly, given the importance of recusals in maintaining the legitimacy of the judiciary, *see* Emma J. Payne, Note, *Let the Sun Shine in: A Judicially Implied Timeliness Requirement Creates A Murky Standard for Federal Judges and Litigants and Perpetuates an Appearance of Bias in the Federal Judiciary*, 40 OKLA. CITY U. L. REV. 597, 606 (2015) (footnote omitted), and this atmosphere of uncertainty, I would not construe the "earliest possible moment" standard as implicating an objection-like immediacy mandate for raising a recusal issue on pain of waiver.  Nonetheless, a timeliness requirement is a necessary component of the recusal framework in order to avoid unnecessary delays and judge-shopping, both of which impair the judicial process.  *Scott v. Pryor (In re Chandler's Cove Inn, Ltd.)*, 74 B.R. 772, 773 (Bankr. E.D.N.Y. 1987) ("[R]ecusal motions which are too liberally granted are tantamount to unilateral 'judge shopping' and may be used for a delaying tactic, for their disposition requires a serious investment of judicial time and thought.").

Thus, I believe that questions of timeliness should be subject to a more discerning analysis, recognizing the above difficulties and providing some notice to litigants who may be faced with recusal scenarios.  In the absence of delineated

procedures, I would adopt the four-factor test employed by some federal courts in assessing whether a party seeking recusal does so at the "earliest possible moment":

> whether (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay.

*United States v. Amico*, 486 F.3d 764, 773 (2d Cir. 2007) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987)). The demonstration of good cause for delay is "at the crux of the balancing" of these factors. *Id.* at 775 (quoting *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir.1995)); *cf. Reilly*, 507 Pa. at 222, 489 A.2d at 1300 (explaining that moving party had failed to offer an excuse for its delay in filing the motion for recusal). The federal courts have also viewed this four-factor test as encompassing a good-faith requirement. *See Planned Parenthood of Se. Pa. v. Casey*, 812 F. Supp. 541, 546 (E.D. Pa. 1993) (citing *Smith v. Danyo*, 585 F.2d 83, 85 (3d Cir. 1978)).

Applying these factors here, it is evident that Appellants have substantially participated in the litigation, and that recusal of the trial judge at this late stage of the proceedings would represent a waste of judicial resources, thus militating toward the conclusion that the filing was late. However, these two factors must be tempered, at least in part, by acknowledging that the relevant facts undergirding the recusal motion arose at this late juncture in the litigation.[4] Furthermore, Appellants served Appellee with a request for production of documents seeking additional information relative to Judge Branca's involvement and financial interest on September 24, 2007, only 18 days

---

[4] In terms of applying the test to situations in which the facts implicating recusal are discovered near the end of proceedings, these two factors may be viewed as generally providing less overall guidance.

following the pertinent hearing and prior to the closure of the record. Appellee refused the request and instead later opted to seek a protective order for the sought-after documentation.

Regarding the timing of the filing relative to the entry of judgment, although there had been an adverse judgment against Appellants as to liability, the broader recusal concerns appear to have pertained to Judge Branca's financial interest that was contingent on the calculation of damages and discovered subsequent to the liability verdict.[5] Additionally, Appellants' filling of the recusal motion on October 15 coincided with a previously scheduled conference with the judge and parties to address briefing and final argument; thus, the motion was submitted in advance of any actual or anticipated intervening action by the court. In this regard, I respectfully differ with the majority's determination that the closure of the record, relative to the particulars of this case, is significantly material to the timeliness inquiry. *See* Majority Opinion, *slip op.* at 19. Accordingly, Appellants' request should be considered as having been forwarded prior to the entry of judgment.[6]

As to the final and most critical factor, good cause for delay, Appellants develop that they needed to carefully consider their claim for recusal and that they filed prior to

---

[5] The parties had previously agreed to proceed before Judge Rogers premised on Appellee's erroneous representation that Judge Branca's involvement in the matter had ended and all of his fees paid. *See* N.T., Nov. 9, 2007, at 48-49 (Appellee's counsel acknowledging that they had indicated that "all counsel fees had been paid" to Judge Branca).

[6] Although the Superior Court OISA also observed that Appellants' filing followed James Kravitz's "appalling" testimony regarding his financial activity, *Lomas*, 130 A.3d at 125, it seems to me that most parties to a litigation will experience adverse circumstances at some point, particularly in lengthy and complex matters. Thus, although Kravitz's testimony may appear particularly harmful, it is difficult to assess its direct import on Appellants' reasoning relative to recusal. Accordingly, I limit my rationale to the distinct actions taken by the trial court.

any further advancement of the litigation, assertions which I believe provide reasonable explanations for the timing of their request. Furthermore, as previously noted, Appellants requested discovery pertaining to Judge Branca, and they also retained new counsel, both of which may be viewed as indicators that Appellants recognized the gravity of suggesting the recusal of not only the sitting trial judge, but all of his Montgomery County colleagues. Additionally, an earlier filing -- for example, within the 30-day review period -- would not have caused any less disruption or delay in the proceedings. *See Riley v. State*, 608 P.2d 27, 29-30 (Alaska 1980) (relaxing application of strict time limits on the basis that, *inter alia*, the later submission did not cause any additional delay than would have occurred if timely motioned). *But see Wakefield v. Stevens*, 290 S.E.2d 58, 61 (Ga. 1982) (concluding that a 20-day delay was untimely). Accordingly, given the peculiar circumstances of this case and the lack of concrete procedural guidance, I find that good cause existed to justify Appellants' filing at the October 15 conference. Assessing the sum of these factors, with emphasis on Appellants' good cause for delay, I believe the motion for recusal should be deemed timely.

Since I would conclude that Appellants did not waive their challenge, I turn to the primary questions presented for review pertaining to whether the trial judge and/or the rest of the common pleas court should have recused in light of their colleague's participation and direct and proportional financial interest.[7]

---

[7] Appellee contends that, since the issues presented for review are framed in terms of whether recusal was required "as a matter of law," the Court is precluded from determining whether Judge Rogers abused his discretion in refusing to recuse. *Lomas v. Kravitz*, __ Pa. __, 147 A.3d 517 (2016) (*per curiam*). From my perspective, the substance of this matter pertains to the propriety of recusal in the circumstances, and I do not read the issues in such a strictly constrained manner.

Appellants' advocacy closely tracks the reasoning of the Superior Court's Opinion in Support of Reversal ("OISR"), arguing that the appearance of propriety standard is an independently sufficient basis for recusal, *see Goodheart*, 523 Pa. at 201-02, 565 A.2d at 764, and that Pennsylvania courts have required recusal in factually similar situations, *see, e.g.*, *Commonwealth ex rel. Armor v. Armor*, 263 Pa. Super. 353, 398 A.2d 173 (1978). They further contend that proper application of the recusal framework relative to Judge Branca's financial interest mandates the recusal of the entire Montgomery County bench, since the disqualifying circumstances would apply equally to the entire flight of jurists. In Appellants' view, the trial court and OISA improperly limited review to only whether actual bias or prejudice existed.

Appellants also criticize Appellee's proffered "fully informed person" standard -- assessing the appearance of impropriety from the perspective of a person who is "*fully informed* of all . . . surrounding facts and circumstances" and who closely examines those facts to determine whether the proceedings will be, or were, fairly conducted, or whether the record reveals actual bias or prejudice. Brief for Appellee at 15, 32 (emphasis in original). Appellants contend that adopting such a view would essentially result in a *post hoc* evaluation of whether the process was fair and just, rather than the foundational question underlying the appearance inquiry, which is distinctly aimed at ensuring the public's faith in the judiciary. Further, Appellants observe that Appellee offers no procedures for determining "all of the true facts and surrounding circumstances," and that to do so would likely require a remand for a hearing and discovery, much in line with the request for documents that Appellants filed, but which was denied. Instead, in Appellants' view, analyzing the appearance of impropriety should simply focus on whether "a significant minority of the lay community could reasonably question the court's impartiality." Reply Brief for Appellants at 10 (quoting

*Commonwealth v. Darush*, 501 Pa. 15, 24, 459 A.2d 727, 732 (1983)). Lastly, Appellants dispute that they have conceded that the proceedings were fair and without error, noting that they sought to challenge various aspects of Judge Rogers' damages determination, but that such issues were denied by this Court for review.

In response, Appellee effectively concedes that the appearance of impropriety may independently warrant recusal, but contends that any application should be made by reference to the "fully informed" person. Brief for Appellee at 25 (citing *Pepsico v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985), *as cited in* 207 Pa. Code §15-4). In this respect, Appellee argues that, since there is no dispute that Judge Rogers ruled impartially and conducted a fair trial, a person fully informed of these facts could not view Judge Branca's intermittent participation and financial interest as establishing an appearance of impropriety. Stated another way, Appellants' concession that they had a fair trial moots any appearance of impropriety. *See Reilly*, 507 Pa. at 222, 489 A.2d at 1300 ("If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. If so, the alleged disqualifying factors of the trial judge become moot."). Appellee further forwards that this Court has previously found that the lack of actual prejudice or bias during a trial ameliorates any concerns regarding an appearance of impropriety. *See* Brief for Appellee at 28 n.2 (citing *In re Lokuta*, 608 Pa. 223, 240, 11 A.3d 427, 436-37 (2011)).

Appellee also contends that, except for matters involving public corruption or obvious conflicts of the adjudicating judge, the trial judge has discretion to assess the appearance of impropriety.[8] Because this matter does not fall within the narrow subset of cases that present an appearance of impropriety as a matter of law, *see* 207 Pa.

---

[8] I agree with the largely undisputed notion that appellate courts should review recusal decisions for an abuse of discretion. *See Reilly*, 507 Pa. at 220, 489 A.2d at 1299.

Code §15-4 (advising as to potential categorical scenarios implicating the appearance of impropriety), it is Appellee's position that Judge Rogers' ruling in this matter should not be overruled.

Moreover, even if Judge Rogers' recusal was appropriate, Appellee proffers that, relative to disqualifying the sum of the Montgomery County bench, the Court should consider the resulting prejudice to him and Appellants' ongoing manipulation of the judicial system. Appellee continues that requiring court-wide recusal in all instances where a litigant was a former client of a sitting judge and provided a referral fee would be unworkable. As a final point, Appellee contends that any reliance on *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252 (2009), is misplaced, given the significantly differing factual circumstances.

On the merits, my view substantively aligns with the reasoning developed in the Superior Court's Opinion in Support of Reversal ("OISR"). *See Lomas v Kravitz*, 130 A.3d 107, 132-45 (Pa. Super. 2015) (OISR). In particular, I agree that the appearance of impropriety standard is an independent substantive precept that may warrant recusal, and that Judge Rogers and the full Montgomery County bench should be recused in this instance predicated on Judge Branca's participation and direct and proportional financial interest in the discretionary damages award despite the presumption that Judge Rogers and the other jurists would handle the matter with impartiality and fairness. Further, I believe the OISR correctly recognized that the case law had, in some instances, mistakenly deemed a trial judge's decision with regard to the appearance of impropriety an "unreviewable decision," when that axiom should only pertain to a judge's self-evaluation for actual bias or prejudice. *See id.* at 138-41 & n.33.

As for Appellee's contentions that are not addressed by the OISR's reasoning, I remain unpersuaded. Regarding the notion that the appearance standard should incorporate the fully informed person framework, I agree that the analysis should be made in light of all the surrounding facts and circumstances, rather than based on incomplete or mistaken information. However, as Appellants cogently observe, Appellee's proffered standard effectively reviews whether the proceedings were fair and just and whether actual bias or prejudice can be found in the record, rather than addressing the gravamen of the appearance of impartiality inquiry, *i.e.*, whether there could be a public perception of impartiality that undermines confidence in the judiciary. *See Reilly*, 507 Pa. at 221, 489 A.2d at 1299 ("[T]he administration of justice should be beyond the appearance of unfairness . . . so that courts may as near as possible be above suspicion . . ..").  In this respect, the *Caperton* Court's observation that a "judge's own inquiry into actual bias . . . is not one that the law can easily superintend or review . . ." demonstrates the practical difficulty with Appellee's preferred post-judgment analysis.  *Caperton*, 556 U.S. at 883, 129 S. Ct. at 2263.  Further, the *Caperton* decision required an objective test to protect due process principles, which is satisfied by the appearance of impropriety standard.  *See id.*

Moreover, although the notion of fairness may facially appear to ameliorate appearance concerns relative to certain objective aspects of the proceedings, the lack of record evidence proving partiality does little to counter the potential public perception that a discretionary ruling, such as the damages calculation in this case, was materially influenced by a judge's relationship with a financially interested entity. Accordingly, I am of the view that the appearance of impropriety -- that is, "conduct [that] would create in reasonable minds a perception that the judge violated [the Code of Judicial Conduct] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality,

temperament, or fitness to serve as a judge," Code of Judicial Conduct Rule 1.2, Comment [5] -- alone forms an independent basis for recusal, even in the absence of actual bias, unfairness, or prejudice on the part of the trial judge. *See Lomas*, 130 A.3d at 133 (OISR).[9]

As to Appellee's policy perspective, insisting that court-wide recusals, based on a prior relationship between sitting-judges' and former clients, would prove unworkable, this contention seems predicated on a far broader set of factual circumstances than are at issue in this matter. Here, the Court is concerned only with the implications of a current judge's participation and presently existing financial interest that is directly and proportionally tied to the monetary award determined by a colleague of the same court. Of course, newly elected judges transitioning from private practice will need to be aware of the challenges that such a shift presents, but I do not believe that the position expressed here would impose the significantly disruptive burdens that Appellee predicts.

Lastly, although I agree with Appellee that *Caperton* is distinguishable on its facts, the import of that case, at least relative to Appellee's claims, is its due process based mandate for objective appellate review of the appearance of impropriety, thus reinforcing the notion that appearances -- apart from actual bias, prejudice, and unfairness -- are a necessary component of the recusal framework.

---

[9] The OISR notes that some authorities employ the above language from the Code of Judicial Conduct, while others follow Appellants' preferred formulation, pertaining to a significant minority of the lay community. *See Lomas*, 130 A.3d at 140 n.31 (OISR). From my perspective, this is largely a distinction without a difference, although it appears to me that the former has been referenced with greater frequency than the later. *See, e.g.*, 207 Pa. Code. §15-4 (formal advisory opinion regarding disqualification and recusal).

Ultimately, I am of the view that Judge Branca's participation in this matter and his present primary financial interest in the monetary damages, assessed by a colleague who shares the same bench, establishes an appearance of impropriety that warrants the recusal of the entirety of the Court of Common Pleas of Montgomery County. Further, I believe that this conclusion requires a new trial as to both liability and damages before a judge assigned from outside of Montgomery County. Although the relevant facts apparently were not revealed to Judge Rogers and Appellants until the damages phase, the appearance of impropriety created by Judge Branca's participation and financial interest clouds both phases of the trial, which could have been avoided had a full disclosure been proffered when the matter initially arose pretrial. *See supra* note 5.[10]

---

[10] Although the above reasoning would dispose of this matter, there are additional potential procedural irregularities that emerged in this case relative to Judge Rogers' initial order for recusal of the full Montgomery County bench, which I believe reinforces the uncertainty that seems to envelope this area of law in Pennsylvania jurisprudence.

For example, in some jurisdictions, recusal orders may not be reconsidered by the issuing judge, even if filed "prematurely," *Lomas v. Kravitz*, No. 00-05929, at 8 (C.P. Montgomery Cnty. filed Dec. 31, 2008), or otherwise erroneously submitted. *See Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir. 1988) ("Once a judge has disqualified himself, he or she may enter no further orders in the case[, with power thus] limited to performing ministerial duties necessary to transfer the case to another judge (including the entering of 'housekeeping' orders)." (citations omitted)). *But see United States v. Lauersen*, 348 F.3d 329, 338 (2d Cir. 2003) (concluding that a judge may revisit a recusal order, citing changed circumstances as an example of circumstances justifying such).

Additionally, the prevailing view among jurisdictions is that once the recusal order is signed, the submitting judge is barred from reentering the case, except for narrow circumstances in which the disqualifying factor is removed, or there was a material error as to the existence of the recusal-inducing fact. *See Luce v. Cushing*, 868 A.2d 672, 677-78 (Vt. 2004) (collecting cases). However, there is a minority view that takes a more strict approach, prohibiting a recused judge from rendering any further decisions in the case, regardless of circumstances. *See Jenkins v. Motorola, Inc.*, 911 So. 2d
(continued...)

Although, in the proper case, the above considerations may be dispositive, the parties' present advocacy has not been developed along these lines.