**UNITED STATES of America**

v.

**Ifedoo Noble ENIGWE.**

**Criminal Action No. 92–257.**

United States District Court, E.D. Pennsylvania.

June 8, 2001.

Roland Jarvis, AUSA, William Nugent, AUSA, Washington, DC, for plaintiff.

Noble Enigwe, Fairton, NJ, pro se.

Joseph P. Capone, Christopher D. Warren, Philadelphia, PA, Alan L. Yatvin, Popper & Yatvin, Philadelphia, PA, Ifedo Noble Enigwe, White Deer, PA, for defendant.

### *ORDER & MEMORANDUM*

DuBOIS, District Judge.

### *ORDER*

**AND NOW,** this 8th day of June, 2001, upon consideration of Defendant's Motion for Recusal of Judge (Document No. 273, filed January 28, 1999), for the reasons stated in the attached Memorandum, **IT IS ORDERED** that Defendant's Motion for Recusal of Judge (Document No. 273) is **DENIED** and the Affidavit Under 28 U.S.C. § 144 Against Judge Jan E. DuBois is **DISMISSED.**

### *MEMORANDUM*

## I. BACKGROUND

On May 6, 1992, defendant Ifedoo Noble Enigwe ("Enigwe," "defendant" or "peti-

tioner") was indicted on four counts by a Grand Jury in the Eastern District of Pennsylvania for trafficking in heroin. On August 7, 1992, he was convicted by a jury on all four counts and, on August 13, 1992, was sentenced by this Court, *inter alia*, to 235 months in prison. The conviction and sentence were affirmed by the Third Circuit in an unpublished Memorandum on April 28, 1994.

On August 24, 1994, defendant filed a *pro se* Motion pursuant to 28 U.S.C. § 2255 seeking to vacate his sentence. After an evidentiary hearing, at which defendant appeared *pro se*, his Motion was denied by Order dated September 11, 1995. *See United States v. Enigwe*, Crim. A. No. 92–00257, 1995 WL 549110 (E.D.Pa. Sept.11, 1995). Defendant's Motion for Reconsideration was denied on March 1, 1996. *See United States v. Enigwe*, Crim. A. No. 92–00257, 1996 WL 92076 (E.D.Pa. Mar.1, 1996). On appeal, by Order dated July 23, 1996, the Third Circuit vacated the denial of defendant's § 2255 Motion and remanded the case to this Court for appointment of counsel and further proceedings. On remand, this Court appointed counsel for defendant and conducted a second evidentiary hearing. Thereafter, defendant's § 2255 Motion was again denied; that ruling was subsequently affirmed by the Third Circuit. *See United States v. Enigwe*, Crim. A. No. 92–00257, 1997 WL 430993 (E.D.Pa. July 16, 1997), *aff'd* 141 F.3d 1155 (3d Cir.1998) (No. 97–1632). Defendant's petition to the United States Supreme Court for a writ of certiorari was denied. *See Enigwe v. United States*, 523 U.S. 1102, 118 S.Ct. 1573, 140 L.Ed.2d 806 (1998) (No. 97–8516).

On January 22, 1998, defendant filed a Letter/Motion to Vacate the "Judgment entered at my sentencing" under Federal Rule of Civil Procedure 60(b)(6) (Document No. 216, filed January 26, 1998).

The Court treated this as a second or successive motion under 28 U.S.C. § 2255 and denied the Motion by Order dated February 13, 1998. The Court also denied, by Order dated February 25, 1998, defendant's Reply (Document No. 220, filed February 20, 1998), which was treated, at defendant's request, as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Next, the Court denied defendant's Motion for Reconsideration of its Orders of February 13 and February 25, 1998. *See United States v. Enigwe*, Crim. A. No. 92–00257, 1998 WL 150974 (E.D.Pa. Mar.30, 1998). Then, in July 1998, the Court denied two additional motions filed by Enigwe: defendant's Motion to Compel the United States Marshals to Return the Money Retained on a Writ of Execution, *see United States v. Enigwe*, Crim. A. No. 92–00257, 17 F.Supp.2d 388 (E.D.Pa. July 8, 1998), and defendant's Motion for Production of the Grand Jury Ministerial Records, *see United States v. Enigwe*, Crim. A. No. 92–00257, 17 F.Supp.2d 390 (E.D.Pa. July 8, 1998). Defendant then filed a Motion for Reconsideration of the Court's Orders of July 8, 1998 (Document No. 257, filed July 30, 1998); it was denied by Order dated September 2, 1998. See United States v. Enigwe, Crim. A. No. 92–00257 (E.D.Pa. Sept. 2, 1998).

Defendant filed a Second or Successive Petition for Vacation of Conviction Pursuant to § 2255 (Document No. 258, filed July 15, 1998), which was supplemented by defendant's Additional Claims to Petitioner's Second § 2255 Motion Sub Judice (Document No. 261, filed August 26, 1998). The Court denied these motions by Order dated September 28, 1998 and transferred the motions to the Third Circuit pursuant to 28 U.S.C. § 1631. *See United States v. Enigwe*, Crim. A. No. 92–00257, 1998 WL 670051 (E.D.Pa. Sept.28, 1998). By summary order dated June 3, 1999, the Third

Circuit denied defendant's application to file a second or successive § 2255 motion. Defendant also filed an Application for Bail Pending Resolution of Petitioner's Habeas Corpus Petition Sub Judice (Document No. 260, filed August 14, 1998); it was denied by Order dated September 3, 1998. *See United States v. Enigwe*, Crim. A. No. 92–00257 (E.D.Pa. Sept. 3, 1998).

While defendant's second or successive § 2255 petition was pending before the Third Circuit, Enigwe filed Defendant's Motion to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Document No. 272, filed January 6, 1999) and Defendant's Motion for Recusal of Judge (Document No. 273, filed January 28, 1999). After filing the Motion for Recusal of Judge, defendant filed eleven additional motions as follows: (1) Defendant's Rule 60(b)(6) Motion to Vacate This Court's Decision on Section 2255 Motion Entered Against Petitioner on July 16, 1997 (Document No. 274, filed February 10, 1999); (2) Defendant's Second or Successive Petition for Vacation of Conviction Pursuant to § 2255 (Document No. 278, filed January 20, 2000);[1] (3) Defendant's Supplemental Motion to § 2255 Motion Pending Before This Court (Document No. 279, filed March 23, 2000); (4) Defendant's Motion to Dismiss the Indictment Pursuant to Rule 12(b)(2) Fed. R.Crim.P. (Document No. 282, filed June 30, 2000); (5) Defendant's Addendum to the Motions Sub Judice (Document No. 283, filed July 11, 2000); (6) Defendant's Emergency Motion for Bail (Document No. 285, filed July 31, 2000); (7) Defendant's Pro Se 28 U.S.C. 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 292, filed November 16, 2000);[2] (8) Defendant's Pro Se Motion to Expedite (Document No. 296, filed January 16, 2001); (9) Defendant's Pro Se Motion to Dismiss Without Prejudice (Document No. 297, filed January 16, 2001); (10) Defendant's Pro Se Motion for Bail (Document No. 298, filed February 5, 2001); and (11) Defendant's Pro Se Motion to Expedite Ruling of This Case (Document No. 299, filed April 4, 2001). By Order dated May 31, 2001, the Court granted Defendant's Motion to Dismiss Without Prejudice (Document No. 297, filed January 16, 2001) in which defendant asked that seven (7) of his pending motions be dismissed without prejudice.

In addition to the numerous motions filed in this Court, after filing his motion for recusal, defendant filed two petitions for a writ of mandamus to the Third Circuit, both of which were denied in unpublished opinions. *See In re Ifedoo Noble Enigwe*, 254 F.3d 1077 (3d Cir.2001) (unreported) (writing that mandamus relief is not available to correct a judge's refusal to recuse himself); *In re Ifedoo Noble Enigwe*, No. 01–1594 (3d Cir. Apr. 27, 2001) (unreported) (denying without prejudice defendant's request for mandamus relief seeking an order directing the district court to rule on his § 2255 motion).

On January 20, 1999, Enigwe filed an action under the Racketeering Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1964(a), against the undersigned

---

**1.** By order dated May 26, 2000, the Third Circuit denied Enigwe's application to file a second or successive 28 U.S.C. § 2255 motion. *See In re Ifedoo Noble Enigwe*, No. 00–1278 (3d Cir. May 26, 2000) (Document No. 281, filed May 30, 2000).

**2.** By order dated December 8, 2000, the Third Circuit ordered that this motion, one of defen-dant's successive petitions under 28 U.S.C. § 2255, be docketed. The District Court docketed the petition effective November 16, 2000, the date that his application to file a second or successive petition was filed in the Third Circuit. *See In re Ifedoo Noble Enigwe*, No. 00–3558 (3d Cir. Dec. 8, 2000) (Document No. 291, filed December 11, 2000).

Judge, his law clerks, his courtroom deputy, and his secretary. With his complaint, Enigwe filed an application for leave to proceed *in forma pauperis*. The RICO action was assigned to the Honorable Norma Shapiro. By order dated April 9, 1999, Judge Shapiro denied the application for leave to proceed *in forma pauperis* on the ground that Enigwe had sufficient assets to enable him to pay the full $150.00 dollar filing fee. Enigwe's request for reconsideration was denied by Judge Shapiro on May 12, 1999.

Presently before the Court is defendant's recusal motion. For the following reasons, defendant's Motion for Recusal of Judge (Document No. 273, filed January 28, 1999) is denied.

## II. DISCUSSION

Defendant moves for disqualification under 28 U.S.C. § 144, which provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The statute further provides, in pertinent part, that "[t]he affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time...." 28 U.S.C. § 144. Because petitioner's affidavit was not timely filed and is insufficient as a matter of law, petitioner's motion is denied.

As an initial matter, the Court notes that "[i]t is the duty of the judge

against whom a section 144 affidavit is filed to pass upon the legal sufficiency of the facts alleged." *United States v. Townsend,* 478 F.2d 1072, 1073 (3d Cir.1973); *see also Bumpus v. Uniroyal Tire Co.,* 385 F.Supp. 711, 712 (E.D.Pa.1974) ("Such a motion is properly addressed to and ruled upon by the Judge himself.") (citing *United States v. Bell,* 351 F.2d 868 (6th Cir. 1965)). The mere filing of an affidavit, however, does not automatically disqualify a judge. *See Townsend,* 478 F.2d at 1073. "Disqualification results only from the filing of a timely and sufficient affidavit." *Id.* The Court will address each of these issues in turn.

### A. Timeliness

As observed in *Smith v. Danyo,* the requirement that an affidavit be filed no less than 10 days before the beginning of the term at which a proceeding is to be heard "is no longer pertinent because terms of court have been abolished." *Smith v. Danyo,* 441 F.Supp. 171, 175 (M.D.Pa.1977). Despite this, 28 U.S.C. § 144 "still requires that an affidavit for recusal be filed timely." *Id. See Bumpus v. Uniroyal Tire Co.,* 385 F.Supp. 711 (E.D.Pa.1974) (rejecting affidavit as untimely filed where facts that gave rise to the allegations contained in the affidavit occurred between two weeks and two months prior to the filing of the motion).

The requirement that an affidavit and motion for recusal be timely filed is not a mere formality. As explained by the Third Circuit, "[t]he judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Smith v. Danyo,* 585 F.2d 83, 86 (3d Cir.1978). Ac-

cordingly, "when the circumstances giving rise to the charge of bias occur or are discovered after the case has commenced, timeliness should be measured not in some absolute and arbitrary manner from the date of discovery, but with respect to the future stages of the case." *Id.*

■ In this case, the grounds for recusal stated in petitioner's affidavit are based on incidents that allegedly occurred at a hearing held on June 3, 1997, or in connection with that hearing. All of the facts alleged thus occurred approximately eighteen months before petitioner filed his motion for recusal and supporting affidavit on January 28, 1999. As set forth *supra*, defendant filed numerous motions, including a second or successive § 2255 motion, in between the time he learned of the alleged bias in this case and the time he filed his motion for recusal. Furthermore, no explanation for any delay in the filing of the motion to recuse has been offered by petitioner. The Court thus concludes that petitioner has not acted with "the requisite diligence required by 28 U.S.C. § 144," *Smith*, 441 F.Supp. at 175, and that his actions resemble those of a "litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Smith*, 585 F.2d at 86. As a consequence, petitioner's motion for recusal is denied on the ground that it was not timely filed. However, even assuming *arguendo* that petitioner's motion was timely filed, the Court nevertheless determines that petitioner's affidavit fails to set forth facts sufficient to meet the requirements of 28 U.S.C. § 144.

### B. Sufficiency

■ In evaluating a motion brought under § 144, the "test is whether, assuming the truth of the facts alleged, a reason-able person would conclude that a personal as distinguished from a judicial bias exists." *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir.1976). "Neither the truth of the allegations nor the good faith of the pleader may be questioned, regardless of the judge's personal knowledge to the contrary." *Id.* (citing *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921)).

■ As a rule, only allegations of personal bias and prejudice will suffice and the bias or prejudice must stem from an extrajudicial source. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.") (citing *Berger v. United States*, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481 (1921)); *United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir.1989) ("Only bias which is personal or extrajudicial in nature is disqualifying."); *Lambert v. Blackwell*, 2001 WL 410639, at *2 n. 3 (E.D.Pa. Apr.20, 2001) (observing that the alleged prejudice must stem from an extrajudicial source to require disqualification under § 144) (citing *Liteky v. United States*, 510 U.S. 540, 544, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

■ Additionally, the affidavit on which a motion for recusal is based must state particularized facts and reasons showing why recusal is required. *See Townsend*, 478 F.2d at 1074 ("Facts including time, place, persons, and circumstances must be set forth."). As such, "[c]onclusory statements and opinions ... need not be credited." *Vespe*, 868 F.2d at 1340 (citing *United States v. Haldeman*, 559 F.2d 31, 134 (D.C.Cir.1976) (en banc)); *see also Bumpus*, 385 F.Supp. at 715 ("Subjective conclusions or opinions that

bias or the appearance of impropriety may exist are insufficient to require a Judge's disqualification."). In addition, "[p]rior rulings of the Court cannot provide such a factual basis [so as to require recusal]." *Id.* at 713.

 In this case, petitioner states in his affidavit that the Court is personally biased against petitioner and in favor of the government. In support of this general proposition, petitioner states that improper *ex parte* communication between the Court and counsel for defendant occurred in 1997. In his affidavit, defendant states that Christopher Warren, former counsel to Enigwe, told defendant that he "spoke with the Judge who is willing to consider a lenient sentence under nine years so that this case will stop bouncing back and forth from him to the court of appeals." Pet.'s Aff. ¶ 4. Petitioner also points to the transcript of a hearing that occurred on June 3, 1997, as providing further evidence of this conversation and the resulting prejudice or bias. Enigwe claims that when the issue of whether any *ex parte* communications had occurred was raised, the Court became defensive and agitated and stated that "I am not going to let you set Mr. Warren up for another ineffective assistance of counsel claim." Pet.'s Aff. ¶ 5. Petitioner also avers that the Court cautioned Mr. Warren against

speaking about the alleged *ex parte* communication with petitioner, *id.* ¶ 6,[3] and made an effort to conceal that *ex parte* communication had occurred. *Id.* ¶¶ 6, 8.

In addition, defendant points to a number of unfavorable rulings and comments made by the Court as evidence of personal bias. In his affidavit, petitioner relies on the following allegations: (1) prior to ruling on petitioner's § 2255 motion, at the June 3, 1997 hearing, the Court stated: "if there is a vacating [of Enigwe's sentence]—that's a big if...." (Pet's Aff. ¶ 7), without having seen and reviewed the evidence at the hearing; (2) the Court denied petitioner's § 2255 motion so that the Court's *ex parte* communication with Mr. Warren would not be investigated by the government (Pet.'s Aff. ¶ 9); (3) the denial of one of petitioner's motions was without any factual support other than the Judge stating that " '[t]he court has had much experience with defendant and has heard his consistent assertions of his innocence.' " (Pet.'s Aff. ¶ 10); (4) the Court's ruling with respect to petitioner's claim that he was denied due process was incorrect; *see United States v. Enigwe,* 17 F.Supp.2d 388 (E.D.Pa.1998) (Pet.'s Aff. ¶ 11); (5) the Court concealed from the Third Circuit an affidavit that petitioner claims demonstrates his actual innocence (Pet.'s Aff. ¶ 12);[4] and (6) the Court has

---

3. In support of this allegation, Enigwe points to the following statement made by the Court at the June 3, 1997 hearing: "Mr. Warren, you've learned." Hearing Tr. at 34 (June 3, 1997). Defendant postulates in his affidavit what this statement meant was: "You've learned [that you should not have spoken to the Petitioner about our conversation]." Pet.'s Aff. ¶ 6. As noted *supra,* conclusory statements and opinions are insufficient so as to warrant recusal under 28 U.S.C. § 144. Defendant's opinion as to what the Court meant by the statement "Mr. Warren, you've learned." need not be credited.

4. The Court notes that the Third Circuit, it is unreported Order dated May 26, 2000, wrote:

> Enigwe's application to file a second or successive 28 U.S.C. § 2255 motion is denied. Enigwe submits an affidavit by Sunny Afuekelu indicating that he is responsible for the crimes for which Enigwe has been found guilty. The affidavit submitted by Sunny Afuekelu—who appears to be a Nigerian national who is no longer in this country and subject to this country's laws— is not suffieicent when viewed in light of the evidence submitted at trial....

an actual conflict of interest with defendant arising out of a RICO suit that Enigwe filed against the Court and the Court's employees (Pet.'s Aff. ¶ 13).[5]

In reviewing a motion for recusal under § 144, the Court is mindful of the rule that the allegations contained in an affidavit in support of such a motion must be accepted as true. The Court is, however, firmly of the conviction that petitioner's affidavit is insufficient as a matter of law. As an initial matter, there are no statements in the affidavit in support of disqualification based on *personal,* or *extrajudicial,* bias. All of the facts and allegations set forth in petitioner's affidavit relate to proceedings involving Enigwe and information the Court has learned in the course of its participation in this case. *See United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

Moreover, Enigwe's affidavit is insufficient in that it does not contain particularized facts. *See Townsend,* 478 F.2d at 1074. The affidavit contains a number of theories as to what occurred based on circumstantial inferences, but opinions, theories and conclusory allegations are insufficient to require recusal. *See Vespe,* 868 F.2d at 1340 (citing *United States v. Haldeman,* 559 F.2d 31, 134 (D.C.Cir.1976) (en banc)); *Bumpus,* 385 F.Supp. at 715.

With respect to the *ex parte* communication issue, petitioner relies on *United States v. Furst,* 886 F.2d 558 (3d Cir.1989), a case in which the Third Circuit found

that allegations of *ex parte* communications with defense counsel were sufficient to require recusal. *Furst,* however, is distinguishable from this case on its facts. In *Furst,* there was no question as to the accuracy of the underlying facts on which the affidavit of recusal was based—the district judge in *Furst* acknowledged that he had two *ex parte* communications with defendant Furst's attorney. In contrast, in this case, Enigwe's assertion that the Court had *ex parte* communications with his attorney is based on hearsay statements, opinions, inference and conclusory assertions—not particularized facts.

Similarly, Enigwe's statement that the Court concealed evidence from the Third Circuit is based entirely on inference. In addition, petitioner's other allegations— the Court's "big if" comment, allegations regarding the Court's motives and bases for prior rulings, and the existence of a conflict of interest arising out of an alleged RICO suit—do not form a proper basis for recusal under 28 U.S.C. § 144. All of these allegations clearly stem from the Court's participation in the case or are based on the Court's prior rulings; they are therefore improper grounds for recusal under 28 U.S.C. § 144. *See Bumpus,* 385 F.Supp. at 713 ("Prior rulings of the Court cannot provide such a factual basis [so as to require recusal]."). For all of these reasons, the Court concludes that, upon consideration of the facts alleged in petitioner's affidavit, a reasonable person would not conclude that a personal bias exists. *See Mims v. Shapp,* 541 F.2d 415 (3d Cir.1976).

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Recusal of Judge is denied and

---

In re Ifedoo Noble Enigwe, No. 00–1278 (3d Cir. May 26, 2000) (unreported) (Document No. 281, filed May 30, 2000).

5. The RICO suit, filed on January 20, 1999, was dismissed on April 9, 1999.

the affidavit under 28 U.S.C. § 144 is dismissed.

### ADDENDUM [6]

The Court recognizes that it is unnecessary to explain any of the statements made in the Enigwe affidavit and motion. Nevertheless, this opinion would be incomplete without an explanation of what appears to be at the root of the affidavit and motion—an alleged *ex parte* communication between the Court and Enigwe's attorney appointed in connection with his second § 2255 motion, Christopher Warren. The short answer to these allegations is that there was no *ex parte* communication.

The allegations arise out of a hearing that the Court scheduled on June 3, 1997 for the purpose of receiving evidence with respect to Enigwe's second § 2255 motion. At that hearing, the Court addressed a letter, dated April 14, 1997, that Enigwe sent to his attorney, a copy of which was sent to the Court. A copy of the April 14, 1997 letter is appended to this Memorandum. The April 14, 1997 letter was addressed at length at the hearing because of Enigwe's statement in the letter that he "waived *all* my other issues because you [Warren] told me, in the presence of a witness, that you [Warren] will try to get me *under nine years.*" Letter from Enigwe to Warren, dated April 14, 1997 (emphasis in original). The Court decided to give Enigwe an opportunity to present evidence related to all such issues in order to avoid a problem if the Court decided to deny the second § 2255 motion or, in the event of a resentencing; the Court imposed a sentence in excess of nine years.

In his affidavit under 28 U.S.C. § 144, Enigwe states that the Court had "an *ex parte* communication with court-appointed

lawyer Christopher Warren" and Christopher Warren told Enigwe that the Court "is willing to consider a lenient sentence under nine years so that his case will stop bouncing back and forth from him to the court of appeals." Pet.'s Aff. ¶¶ 3 & 4. Those statements are diametrically opposed to a statement Enigwe made in the April 14, 1997 letter. In the letter, as stated above, Enigwe said: "Before I continue, I would like to remind you that I waived all my other issues because you told me in the presence of a witness that you will try to get me *under nine years.*" Letter from Enigwe to Warren, dated April 14, 1997 (emphasis in original); *see* Hearing Tr. at 6 (June 3, 1997). He said absolutely nothing in the letter or at the June 3, 1997 hearing about any *ex parte* communication.

In paragraph 5 of the affidavit, Enigwe states that, when "this issue [of *ex parte* communication with Warren by the Court] was brought up by this Petitioner[,]" Judge DuBois stated: "I am not going to let you set Mr. Warren up for another ineffective assistance of counsel claim." Pet.'s Aff. ¶ 5; *see* Hearing Tr. at 12 (June 3, 1997). The very next part of in the transcript reads: "If you have anything to present to me, you're going to present it now. If you need more time, you'll be back. But, we're going to stop this—this trip, if you will, from this court to the Court of Appeals and back again. You have a right to appeal anything I do. But, I also intend to do what I can to avoid making any error." Hearing Tr. at 12 (June 3, 1997). The statement with respect to the ineffective assistance of counsel claim was related to the Court's concern that, if the Court denied the motion

---

**6.** The decision of the Court denying defendant's Motion for Recusal of Judge is not

based on what is set forth in the Addendum.

or resentenced Enigwe to a term of incarceration of more than nine years, Enigwe would claim that his waiver of his right to assert the "other issues" was invalid. The Court was simply attempting to eliminate any alleged promise as a basis for giving up those claims. That was made clear later in the hearing when the Court stated:

I want you to assume that you might not get a sentence of nine years. You might not get any reduced sentence at all. I might deny your petition. Assume that and tell me what you want to do regarding all of these other issues. If you wish to go forward with them, we'll give you an opportunity to do that. If you're prepared to go forward now, we'll do it now. If you need more time, we'll give you more time. You tell me what you want to do. But, you're going to do it now.

Hearing Tr. at 30 (June 3, 1997).

To make certain that Enigwe understood what the Court intended, the Court repeated what is set forth *supra* at page 30 of the hearing transcript. In response, Enigwe stated the following:

Well, Your Honor, knowing everything you've said now and knowing that with the denial of the motion that I still have 235 months, I'm still going to waive all those claims and I'm still going to shake Mr. Warren's hand as a good lawyer. And, I'm doing that knowingly, voluntarily and intelligently today.

Hearing Tr. at 31 (June 3, 1997).

The above-quoted parts of the hearing transcript leave no doubt about the basis for the statement made by the Court regarding an ineffective assistance of counsel claim. The statement was made in connection with what Enigwe said in the April 14, 1997 letter to the effect that Enigwe waived all of his other claims because of the alleged promise by Warren. The Court wanted to make certain that Enigwe's waiver of any such claims was not linked to anything Warren might have said about a nine year sentence.

The only other statement in the affidavit that warrants comment is the statement that the Court refused to allow Warren to get on the witness stand and be questioned by government counsel. The explanation for that is a simple one. Warren took the position at the hearing that what he said in his response to Enigwe's April 14, 1997 letter was privileged and that, notwithstanding the fact that a copy of the April 14, 1997 letter was sent to the Court, the privilege was not waived. *See* Hearing Tr. at 33 (June 3, 1997). Under those circumstances, the Court concluded that allowing Warren to testify would lead to questioning about matters subject to the attorney/client privilege, which was not necessary to any relevant issue before the Court.

Dear Mr. Warren:

I received your letter and government's post-hearing memorandum, including the "Restrepo Verification", on Friday, April 11, 1997. You also enclosed a cover letter which made several suggestions to me as to what you feel should be done. Well, I have read the government's memorandum and the "Restrepo Verification", and am hereby letting you know that I do not agree with *anything* you had to say in your cover letter to me. This disagreement now brings me to comment on the post-hering memorandum you filed on my behalf-I do not like the way you argued your issue Part C, at page 11, of the memorandum filed on March 19, 1997.

Before I continue, I would like to remind you that I waived *all* my other issues because you told me, in the presence of a witness, that you will try to get me *under nine years*. And if that were to happen, I am prepared to also waive all my appellate

rights so that the case will be forever put to rest. But the level 34 that you kept arguing does not seem to amount to *under nine years*, and what made it worse, is that even in the "Restrepo Verification", he indicated that his notes reflect a calculation of 121–151 months as having been told to me, which reflects a level 32, but yet in your letter, you still stated that "Restrepo's affidavit thus indicates that he told you that the base offense level applicable to this case was 34. . ." It seems that you are bent on arguing this level 34, because when I discussed with you on the phone, on March 26, 1997, pertaining to this level 34 argument, you told me that there is no other way you could argue for a lesser offense level. I then brought to your attention that since I was not told of the enhancements (leadership role, and perjury), that these enhancements should be deleted as a remedy for ineffective assistance of counsel.

I based my argument to you on Judge Gawthrop's action in *Kates*. But in defending your position, you told me that *Kates'* lawyers did not tell him about the "career-offender" status, and that it is the reason why the court agreed to delete it. So too, here, I was not told about the two enhancements that I received, therefore, it should be deleted as a remedy for the ineffective assistance I received for not being told about them.

You also indicated that I do not have a leg to stand on in arguing that the leadership role enhancement should be deleted because Judge DuBois already found it as a fact, but you forgot that Judge Gawthrop also found it as a fact that *Kates* was a career-offender. In *Kates*, the court pointed out that "I conclude that the least unjust resolution would be to resentence Mr. Kates upon his conviction, but without the career-offender finding under § 4B1.1. It is that provision that stuck him with a mandatory 30–year minimum, an it was that provision and his various attorney's failure to let him in on it, to let him know of the devastating looming presence in his case, *that made their assistance ineffective*. I recognize that this tends to penalize the government, whisking away from its grasp in this case a significant sentencing enhancer, a factor that I have already found to have been borne out by the facts and the law. This will however, tend to allay at least some of the real harm to Mr. Kates caused by his attorney's failure to inform him about the true range of his sentencing exposure." *Kates*, 930 F.Supp. @ 193 (E.D.Pa.1996).

The Court's reason in *Kates* speaks for it self, and is exactly identical to the reason I should be arguing for level 32 in this case, without the leadership role enhancement. And that is what I am arguing for. Your other reasons and proposed arguments which you covered in your cover letter to me, do not conform with my own assessment of the case, and I do not agree with them. However, I would wait to see you in person before I could discuss the matter, since you spoke casually the other day about not trusting your telephone. Plus there other things I would like to discuss with you about Restrepo's sudden predominance in this proceeding.

There is another thing the government used in its memorandum which I felt we could have explored before it happened. The government indicated that "[w]hen asked at the hearing in February 1997 whether he was 'Damien', Enigwe took the Fifth Amendment upon Counsel's advice. Based on these facts, it is inconceivable to the government that Enigwe would have accepted a guilty plea under any circumstances." Govt.'s Post-hearing memo. @5. If you remember, and you should, that prior to the commencement of the evidentiary hearing on February 20, 1997, right

in the courtroom, Mr. Nugent walked in and referred to me as "Noble", and stated that he feels for my family, specifically, my son who is growing up without a father; Marlisa (my spouse) who is going through emotional turmoil, and my father who died in *all these.* That it is time for me to stop thinking about myself, and start thinking about my family. That I was stupid to have fought the way I did, when he, me, and God know what happened. That he hopes this Judge gives me relief today, and that he will not be mad. That he is a nice guy, but when put through the test in his job, that he is a "ball" buster.

When Mr. Nugent finished saying all those things, I expected that we would approach him and ask him how these ordeal could be brought to a closure since he had some kind of compassion in his heart towards the case, like arranging with him so that I can admit my guilt and possibly tell about the offense, without being charged for perjury, but you did nothing with that cue. Now, he is using my silence on the witness stand against me, whereas I was willing to admit *all* guilt and see if I can begin to salvage all the damages that have befallen me in this case. You know that without the bad advice I received from Mr. Capone, I would have pleaded guilty, and most possibly cooperated, especially when I had good reasons to cooperate. Had I known that the government wanted to talk to me, and also that I faced up to twenty years, there is no way I would not have been pressured to cooperate, where I could cooperate.

About the issue of my mother coming from Nigeria for the hearing, I would like to discourage that for now, and my reason is that it takes a long time to obtain a passport in Nigeria (something like two to three months), and as the court indicated, it did not want to prolong this proceeding too long to await my mother's arrival. But if the court would still write an order for her to obtain the visa, so that she can come, in the event of re-sentencing where she, at least, would testify for me, that will great.

You might look at this letter as being harsh, but I want you to know that two heads are always better than one, and as your head is good, added to mine, we may achieve something better. And remember, Judge gawthrop said that "not every little tete-a-tete with [a] client will be all peaches and cream." Id. @192. So remain focused, but take heed to my suggestions. And I will see you real soon before the hearing.

Thank you for your attention to this letter, and please make the necessary arrangement to bring me down to Fairton, N.J. And please let the Judge specify FAIRTON, N.J, so that I don't get taken to a county jail where no law library is available.